ELIZABETH R. STIRLING, and others *vs.* ARCHIBALD STIRLING, SR., named as Executor in a paper-writing purporting to be the last Will and Testament of ELIZABETH ANDERSON.

*Caveat to Will—Immaterial issue—Signing of Will out of the Presence of the Attesting witnesses—Improper instruction—Evidence only admissible to Discredit a witness— When examination of Witness is in the Discretion of the Court.*

Upon a caveat to a will, among the issues sent from the Orphans' Court to a Court of law for trial, there was one which only presented the question, whether the will was signed by the testatrix in the presence of three or more credible witnesses. HELD:

That such issue was an immaterial one; and the finding by the jury either way would not affect the validity of the will.

While under the law of Maryland it is essential to the validity of a will of real estate, that it be attested and subscribed in the presence of the testatrix by three or more credible witnesses, it is not required that the testatrix should sign her name in the presence of the witnesses; that may be done before the witnesses are called in.

A prayer, which, after reciting the fact that the will was drawn by the defendant, and that he was largely benefited by its provisions, went on to say, " and the jury are instructed that such facts are always suspicious circumstances of more or less weight according to the circumstances of each case," is properly rejected.

A subscribing witness to a will, produced on the part of the caveatee, testified at the trial, that in his opinion the testatrix was capable of making a valid will, and denied having previously expressed a different opinion. The caveators then offered proof that the subscribing witness had before the trial expressed a different opinion. HELD:

That the evidence so offered by the caveators was only admissible for the purpose of discrediting the evidence of the subscribing witness.

Stirling, *et al. vs.* Stirling.

E. a witness called by the caveatee, upon cross-examination by the caveators, denied having made certain statements to H.  H. being called by the caveators, testified that E. did make the statements which she had denied.  Upon E. being recalled by the caveatee, and asked again as to such statements, and objection being made to the question, it was HELD:

That it was in the discretion of the Court to allow E. to be recalled and examined as to such statements.

APPEAL from the Superior Court of Baltimore City.

The nature of the case is stated in the opinion of the Court.

Six exceptions were taken by the plaintiffs.  Five were to the admissibility of evidence, and the sixth was to the rulings of the Court upon the prayers.  The third exception was abandoned.  The first exception is stated in the opinion of the Court; and as the second, fourth and fifth exceptions are regarded by the Court as standing upon the same footing with the first, it is not deemed necessary to report them.

*Sixth Exception.*—The plaintiffs offered the five following prayers:

1. That the jury must find for the plaintiffs on the second issue, unless they find that at the time of the execution of the paper purporting to be her last will, Elizabeth Anderson was of sound and disposing mind, and capable of executing a valid deed or contract, even although the jury should find from the evidence that after the execution of said paper, she said she had made her will, and also spoke of said will and some of its provisions. *But the burden of proof is on the plaintiffs to prove to the satisfaction of the jury, that the testatrix at the time of the execution of said paper was not of sound and disposing mind, and capable of making a valid deed or contract.*

2. That unless the jury find that at the time of the execution of the paper purporting to be her last will, Elizabeth Anderson, the testatrix, fully understood the nature of the business in which she was engaged, and had a sufficient capacity to make a disposition of her estate with judgment and understanding, in reference to the amount and situation of her property, and the relative claims of different persons who were or should have been the objects of her bounty, and understood the manner in which she disposed of it, then she had not sufficient mental capacity to make a valid last will, and the verdict must be for the plaintiffs on the second issue. *The provisions of said paper may be considered by the jury in deciding the question of the mental capacity of the testatrix to make a valid last will; and if the jury should believe that the said paper, in its provisions, is unjust or injudicious, that is a fact to be considered with the rest of the evidence, but is not of itself sufficient ground for finding that the testatrix had not sufficient capacity to make a valid will.*

3. That in deciding upon the testamentary capacity of the testatrix, Elizabeth Anderson, the jury may take into consideration, in connection with all the circumstances of the case, any influence which the defendant may have exerted upon the mind of the deceased in reference to the disposition of her property by will, whatever they may find the degree of that influence to have been; provided, the jury find from the evidence that any such influence was exerted by the defendant; and in this connection the jury may take into consideration the fact that the will was drawn by the defendant, and the fact that he is largely benefited by its provisions, and the jury are instructed that such facts are always suspicious circumstances of more or less weight according to the circumstances of each case.

4. That in determining whether Elizabeth Anderson was of sound, disposing mind, and capable of executing a valid deed or contract at the time of the execution by her

of the paper offered in evidence, purporting to be her last will, the jury are entitled to take into consideration the opinion entertained of her mental condition at the time of the execution of said paper, by the subscribing witnesses to her will, and in order to ascertain the opinion upon that subject of Dr. Wilson and of Eliza Bitzer, two of said subscribing witnesses, the jury are not confined to their testimony as given at the trial of this cause, but may also take into their consideration any declarations which the jury shall find from the evidence were made by said witnesses, of the opinion entertained by them of the mental condition of said testatrix at the time said will was executed by her.

5. That in deciding upon the testamentary capacity of the testatrix, Elizabeth Anderson, the jury may take into consideration in connection with all the circumstances of the case, any influence which the defendant may have exerted upon the mind of the deceased, in reference to the disposition of her property by will, whatever they may find the degree of that influence to have been; provided, the jury find from the evidence that any such influence was exerted by the defendant, and in this connection the jury may take into consideration the fact that the will was drawn by the defendant, and the fact that he is largely benefited by its provisions. *But the burden of proof is on the plaintiffs to prove to the satisfaction of the jury that the testatrix, at the time of the execution of the paper purporting to be her last will and testament, was not of sound and disposing mind and capable of making a valid deed or contract.*

The defendant offered the four prayers following:

1. That if the jury find from the evidence that Elizabeth Anderson, on the 21st day of January, 1878, signed the paper-writing of that date, purporting to be her last will and testament, offered in evidence in this cause, in the presence of Dr. James H. Wilson, Miss A. V. Nairn and Miss Eliza Bitzer, and that the said James H. Wilson, A.

V. Nairn and Eliza Bitzer thereupon, in the presence of the said Elizabeth Anderson, subscribed their names to the said paper-writing as attesting witnesses, then the finding of the jury on the first issue must be for the defendant.

2. That if the jury find the facts stated in the defendant's first prayer, then the presumption of law is, that at the time of executing her will, the said Elizabeth Anderson was of sound and disposing mind, and that the burden of proof is on the plaintiffs to satisfy the jury that, at the time of executing said paper, the said Elizabeth Anderson was not of sound and disposing mind and capable of making a valid deed or contract; and unless the jury find that she was not of sound and disposing mind when she executed said will, their verdict must be for the defendant on the second issue.

3. That the plaintiffs have offered no evidence legally sufficient to show that the will of Elizabeth Anderson was procured by undue influence practised upon her, and their verdict must be for the defendant on the third issue.

4. That the testimony of Randolph Slade, John A. Blizzard, George L. Stocksdale, Edward Stocksdale, Stirling Murray and William J. Stirling, as to alleged statements of Dr. James H. Wilson, regarding the condition of Mrs. Elizabeth Anderson, at or about the time of the execution of the will in question; and the testimony of George L. Stocksdale, Miss Sallie Hollingsworth, Miss Anna Hollingsworth and Mrs. Duvall, as to alleged statements of Eliza Huster, formerly Bitzer, about Mrs. Anderson's condition at or about the said time; and the testimony of Sally Hollingsworth, Mrs. Duvall and John Hollingsworth, as to alleged statements of Franklin Bitzer and of Eliza Bitzer, about Mrs. Anderson's condition at or about the said time, if believed by the jury, is to be regarded by them only as rebutting testimony to discredit the testimony of said Wilson, Eliza and Franklin Bitzer, and not

as evidence to show that her condition was in fact such as the same is described to have been in said alleged statements, or to prove her incapacity to make a will. And further, that the testimony of George L. Stocksdale as to the alleged statement made to him by the witness, Eliza Huster, with reference to the promise of the defendant to make a present to said Mrs. Huster, if believed by the jury, is only to be regarded by them as rebutting testimony to discredit the testimony of said Eliza Huster, and is not to be regarded by them as proof that any such promise was in fact made by said defendant.

The Court (BROWN, C. J.,) granted the first, second and fifth prayers of the plaintiffs, with the addition to each, as contained in *italics;* and rejected their third and fourth prayers, and granted the prayers of the defendant. The second prayer of the defendant was conceded by the plaintiffs' counsel, who stated, that in such concession it was not intended to waive their objection to the defendant's first prayer. The plaintiffs specially excepted to the defendant's first prayer, because it did not require the jury to find that the subscribing witnesses signed their names as witnesses to the will of Elizabeth Anderson, either at her request, express or implied, or with her knowledge.

The plaintiffs excepted to the rejection of their third and fourth prayers, and to the granting of the defendant's prayers. The verdict being for the defendant on the issues submitted, the plaintiffs appealed.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, and IRVING, J.

*Bernard Carter,* and *S. Teackle Wallis,* for the appellants.

*Charles Marshall, Arthur W. Machen,* and *I. Nevett Steele,* for the appellee.

STONE, J., delivered the opinion of the Court.

This is a case of a caveat to a will. There were three issues sent to the Court of law for trial.

1st Related to the execution of the will.

2d. Was the testatrix of sound and disposing mind?

3d. Was the will procured by undue influence ?

The first issue is in these words :

"Was the paper-writing bearing date January 21st, 1878, and purporting to be the last will and testament of Elizabeth Anderson, executed by her, or by some person in her presence, and by her express direction in the presence of three or four credible witnesses as, and for her last will and testament?"

By reference to the first issue, it will be seen that the only question it presented for the determination of the jury, was, whether the paper dated January 21st, 1878, was executed by Elizabeth Anderson *as her last will and testament in the presence of three or four credible witnesses?*

This issue is in fact an immaterial one, and the finding of a jury upon it, either way, would not affect the validity of the will.

Neither the Statute of Frauds, nor that of Maryland copied from it, makes the validity of a will dependent upon the testator's *signing it in the presence of witnesses.* The testator may sign the will before the witnesses are called in. But by both statutes it is necessary that the three or four credible witnesses, whose attestation is necessary for the validity of a will of land (as this is,) should *sign their names in the presence of the testator.* 1 *Jarman on Wills,* 213.

If this issue had been found in favor of the plaintiffs by the jury, their finding would have been substantially as follows:

"The paper-writing bearing date January 21st, 1878, and purporting to be the last will and testament of Elizabeth Anderson, was *not* executed by her, or by some person in

her presence, and by her express direction, in the presence of three or four credible witnesses, as and for her last will and testament."

This finding would not necessarily invalidate the instrument. It would be entirely consistent with its valid execution. She, the testatrix, might have signed the paper just as well out of, as in, the presence of the witnesses.

So on the other hand, if the finding was for the defendant on that issue, it would be substantially the same with the word "*not*" stricken out. The jury would find that Elizabeth Anderson did sign the paper in the presence of the witnesses, but the fact essential to the validity of a will of land (and we treat this as such a will throughout,) that the *witnesses signed in her presence* would not be decided.

The special exception taken by the plaintiffs to the granting of the instruction is, that it does not require the jury to find that the *subscribing witnesses* signed their names as witnesses to the will of Mrs. Anderson, *either at her request, express or implied, or with her knowledge.*

But no such question can be properly raised under the first issue in this case. If the plaintiffs desired to present that point, they should have done so by an appropriate issue. Such a question could have been, perhaps, properly raised under an issue like the first issue in *Brewer and McColgan vs. Barrett, et al.*, 58 *Md.*, 587. In that case the issue did raise the question of the proper attestation of the will. So the question here sought to be raised by the plaintiffs was the proper attestation of the will. They contend that the witnesses must attest the will at the request, express or implied, of the testatrix, or with her knowledge.

Without deciding the question so raised by the special exception, it is sufficient for us to say, that before a reversal the Court must be satisfied that there was error in the instruction, and that the plaintiffs were thereby injured.

As we consider the issue itself an immaterial one, and as the question sought to be raised by the plaintiffs cannot be properly raised under such an issue as the first, we must affirm the ruling.

. The plaintiffs' third prayer was refused and the fifth granted. The only material difference between the rejected and granted prayer is, that the rejected one, after reciting the fact that the will was drawn by the defendant, and that he was largely benefited by its provisions, goes on to say : "*And the jury are instructed that such facts are always suspicious circumstances* of more or less weight, according to the circumstances of each case." This latter clause was left out of the granted prayer.

The plaintiffs seem to have fallen into the not uncommon error, in supposing that because an expression may be used in an *opinion* of this Court, that therefore, it is always proper to incorporate it in an *instruction* to a jury in a similar case. This is not true, and such a practice would, in many cases, mislead the jury and work injustice. In the case of *McCready vs. Garrett,* decided at the October Term, 1883, but unreported, where a part of an opinion in another case, was incorporated in an instruction, we said :

"The expression seems to be taken from the opinion of the Court in *Gaither vs. Blowers,* and while there is no objection to the expression in that opinion, connected as it there is with other expressions announcing the law of *that* case, yet it does not follow that a single line taken from that or any other opinion, and separated from the context, and put in an instruction may not make it erroneous and misleading."

The jury in a case of a caveat to a will are entitled to know the facts, who wrote the will, and who were the legatees under it ; but if the draughtsman and the principal beneficiary turn out to be one and the same person, it is not the business of the Court to stigmatize that as a *sus-*

*picious circumstance.* It is for the jury to determine whether it is, in the particular case they are trying, a suspicious circumstance or not. Besides, it is not true that it is *always* a suspicious circumstance against the validity of a will, that the writer is largely benefited by it. In the case of *Griffith vs. Diffenderffer, et al.*, 50 *Md.*, 466, all that the opinion said was that such facts "*are nothing more* than a suspicious circumstance." There was therefore no error in the rejection of the plaintiffs' third prayer.

The Court rejected the fourth prayer of the plaintiffs, and granted the fourth prayer of the defendant. These prayers are antagonistic, and are based upon the following evidence :

The subscribing witnesses to the will when put upon the stand by the defendant, to prove the execution of the will, were asked whether they had not made certain declarations to some third parties, whose names were given, tending to show that they considered Mrs. Anderson incompetent to make a will. The subscribing witnesses denied making the declarations, and the persons to whom they were alleged to have been made, were afterwards examined, and swore that the subscribing witnesses did make such declarations.

The Court in granting the defendant's fourth prayer instructed the jury that the evidence of Slade and others, if believed by them, was to be regarded as only rebutting testimony, to discredit the testimony of the subscribing witnesses, and not as evidence to show that her condition was in fact such as is described to have been in the alleged statements, or to prove directly her incapacity to make a will.

The ingeniously drawn fourth prayer of the plaintiffs proceeds upon the theory, that the jury were entitled to take into consideration *the opinion* of her mental condition entertained by the subscribing witnesses at the *time* of the execution of the will, and in order to ascertain that *opinion,*

the jury might take into their consideration, any declaration made by such witnesses of the opinions entertained by them of the mental condition of Mrs. Anderson at the time of the execution of the will.

The legal effect and operation of this prayer of the plaintiffs amounts to this—that although a subscribing witness may swear at the trial, that in his opinion, the testatrix was of sound and disposing mind at the time of the execution of the will, and may deny that he ever made any declaration inconsistent with such opinion, and another witness is called who will swear that he heard the subscribing witness make such an inconsistent statement, that then the jury, if they believe such declarations were made, must weigh and consider such inconsistent declarations, not as discrediting the subscribing witness, but as proof of his opinion.   Although this theory has been supported by a most elaborate and able argument, it cannot be maintained upon reason or authority.

The jury were empanelled to ascertain the *fact* whether Mrs. Anderson was of sound and disposing mind when she made her will.   The opinion of the subscribing witnesses, being admissible, may be treated and considered as a fact tending to prove the issue.   This opinion, like any other fact, must be proved by the witnesses as a matter within their own knowledge.   Subscribing witnesses are governed by the same rules as other witnesses.   A fact which they *know* cannot be proved by another witness who heard them *say so*.   This would be the baldest *hearsay* evidence. If either party desires the opinion of a subscribing witness he must call the witness himself.   The opposite party may discredit him by proving contradictory statements, and that is all he can do.   The *opinion* of an *expert* may be admissible, but it would be a strange perversion of legal rules, to attempt to prove such an opinion by a witness who *heard* the *expert* express it.   If the opinion of an attesting witness *expressed out of Court*, can be given by

the plaintiffs, as a part of their evidence-in-chief, there would be no necessity to lay the foundation for its introduction, by asking the witness *in Court* whether he ever expressed such an opinion or made such a declaration.

But the matter has been definitely settled, we think, by *Mason, et al. vs. Poulson, Adm'r, &c.,* 40 *Md.,* 355, and 43 *Md.,* 161, and we think the Court clearly right in only admitting the testimony as discrediting, and not as primary evidence.

The first five exceptions of the plaintiffs as to the admissibility of certain evidence, all seem to stand upon the same footing, and the decision of one is the decision of all. We will take the first,—

Eliza Huster, one of the subscribing witnesses to the will, was called by the defendant for the purpose of proving the execution of the will only. While upon the stand for that purpose, and while under cross-examination by the plaintiffs, the plaintiffs' counsel asked her whether at a specified time and place she had not made certain declarations to a Miss Hollingsworth as to the mental condition of Mrs. Anderson at the time of the execution of the will. The witness, Huster, then and there denied the making of the specified statement. After the defendant had proved the factum of the will, the plaintiffs then proceeded to give their evidence touching the capacity of Mrs. Anderson to make a will, and in the course of their evidence proved by Miss Hollingsworth that Mrs. Huster did make the declarations that she, Mrs. Huster, had previously denied. After the plaintiffs had concluded their evidence, the defendant then proceeded with his. In the course of his evidence Mrs. Huster was examined as to the mental condition of the testatrix. In the course of her examination the defendant's counsel read to her the evidence of Miss Hollingsworth as to her declarations, and then asked her this question:

"That being read to you, what have you to say in reference to it? Did you or not say that?"

To this question the plaintiffs objected, upon the ground that the same inquiry had been made of the witness upon her cross-examination when called as a witness for the defendant. Upon this question, it is sufficient for us to say, that in furtherance of justice and for the proper dispatch of business, such questions as these must in a great measure be left to the discretion of the Court in which the case is tried.

It has been the universal practice for the plaintiff to give all his proof, then for the defendant to give all his, and to confine the plaintiff, strictly speaking, to proof in rebuttal only of defendant's proof. But it is always in the discretion of the Court to vary this strict rule whenever they think justice requires it. They may allow the plaintiff to offer in rebuttal, evidence that more properly should have been offered at first, if they are satisfied that the omission to do so was accidental or inadvertent. So they may allow a defendant, after the plaintiff has finally closed, to supply an omission, if they think that justice requires it. So in this case it was entirely within the discretion of the Court to allow the witness, whose character was impeached, to be heard, even if it was not strictly in the regular order.

The last question arising in this case, is upon the third prayer of the defendant, which the Court granted, which instructed the jury that there was no legally sufficient evidence of *undue* influence practiced on the testatrix, and that upon that issue their verdict must be for the defendant.

On a question of this sort, depending as it does entirely upon the evidence, no good result can possibly arise from a mere recapitulation of the evidence. It is enough for the Court to announce the conclusion it arrives at. This practice was followed by this Court in *Griffith vs. Hungerford,* an unreported case decided April Term, 1883, and will likely in the main be adhered to.

But we may correct one error into which the appellants seem to have fallen. Undue influence presupposes testamentary capacity, if the testatrix is free from such undue influence. Undue influence in the legal and proper sense of the term cannot be exerted over an insane or unconscious person. While, therefore, we must assume the absolute verity of all the evidence tending to prove undue influence, yet we must not add to that any evidence tending to show that the testatrix was not conscious at the time the undue influence was alleged to have been exerted. Such evidence as that is pertinent to the second issue only and not to the third.

The definition of undue influence has been settled by several decisions of this Court, running from *Davis vs. Calvert*, 5 *G. & J.*, 269, to *Layman vs. Conrey, Ex'r*, 60 *Md.*, 286. Taking this definition as our guide, we can find in this record no evidence legally sufficient to establish it, and must affirm the decision of the Court below.

<div align="right">

*Rulings affirmed, and*
*cause remanded.*

