# IN THE MATTER OF THE ESTATE OF HALVOR KNUTSON, DECEASED.

## GENA BENRUD AND OTHERS v. OLE O. ANDERSON AND OTHERS.[1]

November 7, 1919.

No. 21,455.

**Will — attesting witness, though a legatee, may prove execution.**

1. Since section 7254, G. S. 1913, annuls the interest of a devisee or legatee in a will where he is an attesting witness thereto and there is but one other attesting witness, such devisee or legatee is a competent witness to prove the will.

**Declarations or admissions of legatees inadmissible, when.**

2. Where there are several legatees in a will, declarations or admissions by one of them, tending to cast doubt on the instrument presented for probate are not admissible, where such legatee has not taken the stand to sustain the will, and such declarations are not part of the res gestae of its execution.

**Cross-examination of legatees for impeachment not permitted.**

3. The contestants may not call the legatee, who has made such admissions, for cross-examination under the statute to lay the foundation for impeachment, and thus indirectly introduce that which is inadmissible directly.

**When will is written in English and testator has given instructions in another language.**

4. Where a will has been drawn in the English language, but all the directions as to its preparation have been given by the testator in another tongue, it may nevertheless be found to be his last will and testament, if, prior to its execution, a substantially accurate translation or explanation of its provisions is given the testator, so that he understands their meaning. It is not necessary that he should correctly appreciate their legal effect.

**Testator's knowledge of will, even if it fails in part to fulfil his intention.**

5. If a testator comprehends and approves the instrument as written, it should not be refused probate because it fails to carry out the intention of the testator as to part of his property.

[1]Reported in 174 N. W. 617.

From an order of the probate court for Goodhue county, Ericson, J., refusing to admit to probate what purported to be the last will and testament of Halvor Knutson, deceased, Gena Benrud, Hans Knutson and Mrs. Edward Olson, three of the beneficiaries under the instrument, appealed to the district court for that county. The appeal was heard by Converse, J., who affirmed the order of the probate court and ordered that the appeal be dismissed. Appellants' motion to vacate the order of affirmance and for findings of fact and conclusion of law was granted, findings of fact were made, and the judgment of the probate court affirmed. The appellants then moved for certain amendments to the findings of fact and conclusion of law, or for a new trial. From an order denying this motion, they appealed. Reversed.

*Albert Schaller* and *Mohn & Mohn,* for appellants.

*P. B. Green* and *O. J. Ostensoe,* for respondents.

HOLT, J.

Halvor Knutson died late in the afternoon of June 25, 1917, a resident of Goodhue county, this state. He was a widower about 84 years of age. He left no blood relatives other than nieces and nephews. Five stepchildren survived. Four of these were the children of his first wife by his deceased brother. The other stepchild, Marne, generally known as Mary Olson, was the daughter of his last wife by her first husband. At the time of his death, Halvor Knutson owned a valuable farm of 200 acres in Goodhue county, some timber land in Wisconsin, and over $6,000 in bank certificates and personal property. For some time before his death, he had made his home with his niece and stepchild Gena Benrud. His stepson Nels Knutson frequently visited him there. It appears that toward the middle of June the deceased became painfully afflicted with a swelling of the feet and legs, and he realized that death was approaching. The swelling developed into gangrene, and during the last four days of his life he was mostly in a comatose condition, incapable of transacting any business.

In the forenoon of June 25, Kenneth G. Benrud, son of Gena Benrud, came to the office of the judge of probate and left an instrument purporting to be the last will and testament of Halvor Knutson. Kenneth had drawn and witnessed the will. The other attesting witness was Nels Knutson. When afterwards presented for probate it was rejected, on the

ground that the instrument was not the last will and testament of the deceased. On appeal to the district court, that court simply affirmed the probate court, making no other findings, but stating in a memorandum that the decision was based solely upon the ground that Nels Knutson, being named as legatee in the will, was incompetent to testify. Hence, as the court undoubtedly concluded, there was no legal proof of the execution of the instrument after eliminating the testimony of Nels Knutson. The court also stated that the other objections to the probate of the instrument were not supported by the evidence. Thereafter the appellants moved the court to strike out the decision made and for findings upon all the issues litigated, and also proposed findings admitting the will to probate. The court vacated the prior decision and filed findings, but not the ones proposed. Thereupon appellants moved for amended findings or a new trial. From the order denying the motion in toto this appeal is taken.

The instrument, Exhibit A, reads:

"June 15, 1917.

"In the name of the Lord, I, Halvor Knutson, of the Town of Goodhue, County of Goodhue and State of Minnesota; will all my personal and mixed property to my stepchildren as follows:

"First. Mrs. Edward Olson, $2,000. Second, Mr. Knut Knutson, $1,-000. Third. The remaining property equally divided among the following Mr. Nels Knutson, Hans Knutson and Mrs. Gena Benrud.

"(Signed)                                        Halvor Knutson,
"Nels Knutson.                                Per K. G. Benrud.
"Kenneth G. Benrud."

The district court found that deceased was competent to make a will until about June 17, 1917, and on the twenty-first or twenty-second he became wholly irrational; that, between the sixteenth and twenty-second, he was probably at times competent; that there was no evidence of undue influence; that either on the fifteenth or twenty-fifth of June the instrument offered for probate was wholly written by Kenneth G. Benrud, "except the signature 'Nels Knutson', the decedent never read it and did not sign it or make his mark to it, and the words used in it are not his words. The evidence as to whether or not he directed Kenneth G. Benrud to prepare a will for him; as to what, if anything, he directed should be put

144 M.—8.

in said purported will; as to whether the purported will was read over to him at any time or correctly explained to him; as to whether the decedent directed Kenneth G. Benrud to sign his name to it; as to whether said purported will was executed prior to June 17th, if at all, is all so unsatisfactory and contradictory and is impeached by circumstances and by the appearance of the Exhibit 'A' itself, that I feel impelled to, and do find as facts:

"(a)   That the provisions contained in Exhibit 'A' are not the directions of the decedent as to what should be incorporated in his last will.

"(b)   That said Exhibit 'A' does not contain either the words or the language of the decedent.

"(c)   That after Exhibit 'A' was written, it was neither read over to him nor correctly explained nor interpreted to him.

"(d)   That said decedent never directed any one to sign his name to Exhibit 'A'.

"9.   That said purported will Exhibit 'A' is not the will of the decedent Halvor Knutson."

The findings leave a fact of utmost importance in this case at large, namely, the date on which the instrument was attempted to be executed. The court finds in the alternative, that it was either on the fifteenth, or on the twenty-fifth of June. If it took place on the twenty-fifth, there can be no doubt upon this record that the instrument proffered is not the will of the deceased, for at that time he was practically dead to this world, and any attempt to propose for probate an instrument executed on that day by him would be but a bold attempt to pass a forgery. But if the instrument was drawn and signed on the fifteenth, and the findings leave that equally probable, then the evidence properly in the case, eliminating that which should not have been received, would seem clearly, if satisfactory to the trial court, to call for its probate as the last will and testament of Halvor Knutson.

The two attesting witnesses, Nels Knutson and Kenneth G. Benrud, were the only persons who had personal knowledge of the circumstances surrounding the drawing and execution of the will. The latter did not testify in the district court, being at the time in our army at France; but, by consent of the parties, the probate judge read on the trial in the district court the notes he had taken of Kenneth's testimony on the hear-

ing in the probate court. This necessarily precluded explanations made desirable because of new matters advanced or developed on the trial in the district court that were not even suggested in the probate court. From the memorandum filed by the district judge when he first decided the appeal, it is clear that Nels Knutson's testimony, though received at the trial, was wholly excluded from consideration, because, on reflection, he came to the conclusion that the rule stated in Bowler v. Fahey, 136 · Minn. 408, 162 N. W. 515, forbade its admission. It is suggested by respondents that the subsequent findings render the ruling now a moot question. We are unable to accept that view. In order that proponents might be in a better position to secure their rights, if perchance his conclusions were wrong, the court took pains to make clear that the first decision resulted because of the rejection of Nels Knutson's evidence. There is nothing in the subsequent findings to show that the court changed his views upon the admissibility of that testimony, or that it was considered at all in making any finding of fact. The elimination of Nels Knutson's testimony, of course, affected proponents' case disastrously.

We think the learned trial court labored under a misconception of the scope of the rule applied in Bowler v. Fahey, supra. It was there held that under section 8378, G. S. 1913, one who voluntarily takes up and persists in a will contest, though he would receive the same amount whether the will was sustained or rejected, asserts such an interest in the issue as to preclude him from testifying to conversations with the testator. The witness there referred to was not one of the attesting witnesses to the will. Section 7254, G. S. 1913, impliedly takes from out of said section 8378 an attesting witness to a will, who is a devisee and heir, by providing that the devise to such witness shall be void, but in the decree of distribution the court shall assign to such witness the share that would have descended to him had there been no will, not exceeding, however, in value the amount of the devise or the bequest. By this statute the interest of an attesting witness, who is both devisee and heir, is destroyed, thus enabling him to testify to the execution of the will and the mental condition of the testator. Harp v. Parr, 168 Ill. 459, 48 N. E. 113. Aside from this, it was held in Vester v. Collins, 101 N. C. 114, 7 S. E. 687, that an attesting witness to a will does not come within the prohibition of a statute like said section 8378, even though he be a devisee or a party

to the contest, he is said to be a witness of the law and not of the party. Nels Knutson was a competent witness, and his testimony should be considered in determining the issues of this will contest.

We also think the assignment of error well taken upon the reception of the testimony of Miss Justman, to the effect that Gena Benrud stated to her that they had tried to get Halvor Knutson to make a will, but that he had absolutely refused. Miss Justman was the nurse who attended the deceased during the last four days of his life. The statement testified to was made during her stay. It is readily seen that this evidence, if admissible, tended strongly to prove that no will was in existence prior to the twenty-first of June.

The contestants were permitted to lay a foundation for the introduction of Miss Justman's testimony by calling Mrs. Benrud for cross-examination and eliciting from her that she knew that the will had been executed before the nurse came, and then asked her whether or not she had made the statement above referred to to Miss Justman. Respondents concede that declarations or statements of Mrs. Benrud could not be received as an admission against interest, because there were other parties interested in the probate of the will. The authorities so hold. In McAllister v. Rowland, 124 Minn. 27, 144 N. W. 412, Ann. Cas. 1915B, 1006, it is said: "It is elementary that the declarations of one of two or more legatees or devisees are not admissible as against the others." See also James v. Fairall, 154 Iowa, 253, 134 N. W. 608, 38 L.R.A. (N.S.) 731. But its admissibility is sought to be defended as impeaching testimony and also as res gestae.

The contention is unsound.

The proponents did not call Mrs. Benrud; she was called by contestants for cross-examination, merely for the purpose of laying a foundation for the introduction of Miss Justman's evidence as to the alleged statement. This was attempting to do by an indirection that which may not be done directly. Mason v. Poulson, 40 Md. 355; Stirling v. Stirling, 64 Md. 138, 21 Atl. 273, and section 372, Alexander, Com. on Law of Wills, cited by respondents, are not in point, because Mrs. Benrud did not take the witness stand in behalf of proponents. Nor in the cross-examination under the statute did she undertake to testify as of her knowledge to any fact pertinent to the issues on trial. Nor can we see any pos-

sible connection between the statement attributed to her and the issue of the execution of the will so as to make the statement a part of the res gestae. The Iowa case, above cited and relied on by respondents, is not in their favor, but quite the contrary. In the case at bar there was no evidence of undue influence by Mrs. Benrud or any one else, and not the slightest suggestion that she brought about the making of the will. That the unwarranted calling of Mrs. Benrud for cross-examination for the sole purpose of laying a foundation for the impeachment permitted from Miss Justman, was highly prejudicial, is clear.

The rulings above noted as erroneous call for a new trial, and in that situation it is improper to discuss the evidence or the conclusions to be drawn therefrom, except insofar as it is evident from the record that improper considerations influenced the deductions made and which may likely again affect the results of another trial.

From the findings it may be inferred that the learned trial judge was of the opinion that, unless the will was read over to testator in the language in which it was written, it could not become his will. It appears that the talk between the scrivener and the testator was entirely in the Norwegian language, and that the latter's directions with respect to the terms of the will and the execution thereof were all in that language. One of the attesting witnesses uses the expression that, after preparation of the instrument and before its execution, it was explained to the deceased, and the other says it was read over. The natural inference is that the reading and explanation were in the Norwegian language, hence a translation rather than a repeating of the very sounds or words in which the will is written. We think if there was a substantially accurate translation or explanation of the instrument, so that testator understood it to dispose of his property as he intended, there should be no hesitancy in holding it to be his will, even though he did not hear it read in the language in which it is written, and even though there was not a literal translation thereof. Some consideration must be given to the manner in which persons in the situation here shown would be expected to transact business of this nature. It is not indispensable to the validity of a will that it should be couched either in the words of the testator or in the tongue in which he gives the directions to the one who drafts the instrument.

One finding is that the provisions contained in the instrument are not the directions of the decedent as to what should be incorporated in the will. This impliedly assumes that he did give directions, as the attesting witnesses assert, but concludes that the directions given were not followed by the scrivener. To this conclusion the court must have been moved by the argument of counsel for contestants that Halvor Knutson directed the will to be so drawn that it would dispose of all his property, but that as drawn it does not dispose of his real estate.

If the deceased, after the instrument as drawn had been explained or translated to him with substantial accuracy, thought that it disposed of all his property, it should be admitted as his last will and testament, even though it failed to dispose of part thereof. It frequently happens that courts construe the dispositions in a will, even when drawn by experienced lawyers, contrary to what the testator thought he had made. Because a will may or even must be construed as to some provision differently from what a testator intended, is no reason why it should be refused probate. If the will was in fact drawn at the direction of the deceased on June 15, and then executed, there is no suggestion in the record that there was any assurance given him that it did dispose of his property in accordance with his expressed desires, or that there was any intention to mislead him as to the provisions of the will, or to fraudulently insert anything other than what he intended should be there, or that it was not correctly translated or explained. Indeed, the testimony indicates a reluctance on the part of Kenneth to prepare the document. The important consideration is, did deceased know the contents of the instrument.

Counsel cite Waite v. Frisbie, 45 Minn. 361, 47 N. W. 1069. The facts there were not like those in the present case. The testatrix was at the point of death, too weak to speak. A will was prepared in which were several bequests, and then her husband was made the residuary legatee. When the instrument was read over to testatrix, she would not sign it, unless changed so as to make it obligatory on her husband to support her brother, if he should come to want. A lawyer was called in to draft and insert such a clause. The dying woman was assured that the clause inserted accomplished what she desired. It was not read or explained to her. In legal effect the clause added nothing to the instrument. The

facts recited seem not to have been disputed. The instrument was held not to be her will, Chief Justice Gilfillan saying: "If it were clear that the words in which the sixth clause is expressed were her words—that they were chosen by her or adopted by her—the instrument would be none the less her will, although the words did not effect the purpose she may have intended."

On the subject under consideration a headnote by the justice who wrote the opinion in Re Gluckman, 87 N. J. Eq. 638, 101 Atl. 295, L.R.A. 1918D, 742, expresses the law thus: "Physical or educational disability, however, as blindness or inability to read the language, if accompanied by circumstances leading the court to suspect possible imposition, subjects proponents of a will to the additional burden of showing to the satisfaction of the court that testator knew its contents so that he understood them." An extensive note accompanies this case, under the topic "necessity of knowledge by testator of contents of his will and proof thereof," with full citation of authorities, as found in L.R.A. 1918D, 742.

Whether the will does or does not dispose of the real estate is not properly before us now, there is no finding that he directed Kenneth to specifically mention his real estate.

For the errors pointed out a new trial should be had.   Order reversed.