## IN RE ESTATE OF ALRICK HOLMSTROM.
## FRED LIND v. FRED W. MOILAN AND OTHERS.[1]

June 14, 1940.

No. 32,278.

*Leslie S. High,* for appellant.
*Stone, Manthey, Carey & MacDougall,* for respondent.

JULIUS J. OLSON, JUSTICE.

Alrick Holmstrom, a bachelor aged 63 years, died February 26, 1938, at a hospital in Virginia. He left an instrument purporting to be his last will wherein contestant Fred Lind, a second cousin, is one of the beneficiaries. Decedent's nearest relatives are brothers and sisters living in Sweden, decedent's

[1]Reported in 292 N. W. 622.

native country. Lind contested the will claiming (1) that certain interlineations were written into it after it was signed by testator; (2) that testator lacked testamentary capacity; and (3) that undue influence was exercised in its procurement. The probate court admitted the will and the district court on appeal affirmed. Contestant's blended motion for amended findings or new trial was denied, and he appeals.

On February 23, 1938, decedent was admitted to the hospital suffering with a heart ailment. On the 24th, the date of the purported will, his ailment turned for the worse. Realizing his critical condition, he requested that a will be prepared for him. His doctor "considered that the matter of his making a will was fairly urgent in view of his condition," but a lawyer could not be promptly located. Efforts were made to contact Mr. Huhtala, an attorney with whom Holmstrom was acquainted and who had acted for him professionally over a period of some eight years. Because of these circumstances, at about five o'clock that afternoon, the doctor prepared an instrument reading thus:

"February 24, 1938

"Alec Holmstrom

"Mrs. Hugo Martinson should have the farm she lives on. Fred Lind & Bro should have the biggest part of the property.

"I give my interest in the cottages at the lake to Jack Koskele my partner.

"I appoint as my administrator Lawyer William Huhtala.

"I have some notes in 1st natl. bank and some in another box at Cook. The note on Ernest Week close to Cook should be collected.

"My car should go to John Koskele.

"[Signed] Alrick Holmstrom

"Signature witnessed by

"John M. Alexon

"Virginia, Minn.

"Walter S. Neff

"Virginia, Minn."

At about 6:00 or 6:30 that afternoon Mr. Huhtala came to the hospital to ascertain what was wanted. He asked the doctor whether Mr. Holmstrom was in such condition mentally as to be able to make a will. The doctor said that he considered him so to be. He was shown the quoted instrument before communicating with testator and proceeded to have it prepared in typewritten form. This is the instrument admitted to probate with certain interlineations to which we shall now direct our attention. After this instrument was so typed, Mr. Huhtala went to testator's room with it, accompanied by the office manager of the hospital and a nurse in charge of testator. There the typewritten instrument was read to him. He desired certain changes made. Mr. Huhtala inserted in his own handwriting the desired changes. Thereafter the entire will as thus changed was read to testator by Huhtala in the presence of the hospital manager and the nurse. All of them testified (and there is no testimony opposed) that the will with these interlineations represented and expressed the wishes of testator. All were of the view that he was mentally competent, that there was no suggestion by anyone as to what the will should be, and that he fully comprehended the nature and extent of his property and had in mind what persons he desired to be the objects of his beneficence. He signed his name thereto legibly and clearly without assistance. While he was extremely ill and suffering intense pain, all are agreed that as far as his mental processes were concerned he was entirely competent. His doctor testified that "he appeared to be mentally clear [although] he was having extremely severe pain."

In view of the facts thus summarized, we can see no escape from holding that the conclusion reached by both the probate and the district courts is well supported by the record. Upon it, had either court found otherwise, it would be difficult indeed to say that such conclusion finds evidentiary support. As was said in In re Estate of Knutson, 144 Minn. 111, 118, 174 N. W. 617, 620: "The important consideration is, did deceased [testator] know the contents of the instrument" executed by

him? In that case the question involved was whether an instrument, prepared for one who did not understand the English language, but based upon oral instructions relating thereto in Norwegian, could be found to be his will. This court said (144 Minn. 117, 174 N. W. 619) : "Some consideration must be given to the manner in which persons in the situation here shown would be expected to transact business of this nature."

■ Tests respecting testamentary capacity are comprehensively stated in 6 Dunnell, Minn. Dig. (2 ed. & 1932 Supp.) § 10208:

"A testator has testamentary capacity if, at the time of making the will, he comprehends his relation to those who would naturally have claims on his bounty, the extent and situation of his property, and the effect of the will in disposing of it, and is able to hold these things in his mind long enough to form a rational judgment concerning them.  *  *  *  The real question is, did he, at the time of making the instrument purporting to be his will, have such mind and memory as enabled him to understand the particular business in which he was then engaged.  *  *  *  Not so much capacity is required to enable a person to make a will as to make a contract where he must hold his own with another at arm's length and with antagonistic interests." Numerous cases are cited under notes 52, 53, and 55.

■ Testator's estate is a small one, estimated worth between $2,500 and $5,000. Under such circumstances, the observation made in Hammond v. Dike, 42 Minn. 273, 275, 44 N. W. 61, 62, 18 A. S. R. 503, is pertinent:

"A testator may be of sound disposing mind and memory sufficient to sustain a will executed by him, though the state of his health and consequent mental condition may be unequal to business transactions of a more exacting nature; and his strength might hold out for the completion of a transaction involving but few details, and requiring his attention but a short time, while it would be insufficient for the disposition of a large estate under an elaborate will."  (Citing cases.)

Applying these tests to the facts here appearing leaves little room for questioning testator's mental capacity.

■ There is no proof, nor suggestion having any basis upon facts, that there was any undue or other improper influence used by anyone. The witnesses were not interested in the result. The instrument bespeaks testator's wishes and should be given effect.

Order affirmed.

MR. JUSTICE STONE took no part in the consideration or decision of this case.