# IN RE ESTATE OF IDA E. FORSYTHE.
## MARY CLABOTS AND OTHERS v. G. I. BADEAUX AND ANOTHER.[1]

March 8, 1946.

No. 34,079.

[1]Reported in 22 N. W. (2d) 19.

304

*Phillips & Sherwood,* for appellants.
*Ryan, Ryan & Ryan,* for respondents.

MATSON, JUSTICE.

Ida E. Forsythe, whose testamentary capacity is in issue, died July 21, 1941, at the age of 78 years, with a gross estate of approximately $20,000 and leaving an instrument purporting to be her last will dated July 24, 1937. She had no children. Her closest surviving relative was a half sister. Testatrix and her husband, Albert Forsythe, had made companion wills in 1930, but, upon his death in 1931, she made a new will wherein, after certain specific

bequests of a minor nature, she bequeathed her residuary estate in nine equal shares to St. Paul's Episcopal Church at Brainerd, the Shriners Hospital for Crippled Children, Walter Helmor, Mrs. John Zander, Mrs. Eva Crawford, Miss M. A. Tait, Mrs. R. W. Puschinsky, Mrs. John Clabots (a half sister), and Mrs. Belle Lowell (an aunt). Four codicils followed, dated respectively May 7, 1934; July 25, 1934; June 10, 1935, providing that Mrs. Ella Michael, her housekeeper, was to receive an equal share in the residuary estate; and October 1, 1936, cancelling a bequest to Miss Tait, who had died. The 1931 will and the codicils were all drawn by her Minneapolis attorney, Robert J. Flanagan. Under the 1931 will, the residuary legatees would have received approximately $3,000 each.

The 1937 will, in issue here, drawn by Walter F. Wieland, testatrix's attorney at Brainerd, omitted entirely decedent's church, the Shriners Hospital for Crippled Children, Eva Crawford, and Belle Lowell, as legatees, and bequeathed to her half sister, Mrs. Clabots, only a cameo pin; to Mrs. Zander, $400 plus certain linens and jewels; to Mrs. R. W. Puschinsky, the sum of $400; to Dr. G. I. Badeaux, certain items of personal property, the sum of $500, and a one-half interest in the residuary estate; and to Mrs. Ella Michael, her housekeeper, certain furniture, her residential dwelling, together with a one-half interest in the residuary estate. Mrs. Ella Michael died in 1942.

■■■ The law is well settled that mental capacity of a testatrix sufficient to make a valid will requires that at the time of making the will she "must understand the nature, situation and extent of her property and the claims of others upon her bounty or her remembrance, and she must be able to hold these things in her mind long enough to form a rational judgment concerning them." In re Estate of Jernberg, 153 Minn. 458, 460, 190 N. W. 990, 991. The burden of proof to establish mental competency rests upon the proponents of the will. Whether the proponents have successfully sustained this burden is a question of fact; and, although the setting aside of a will is no light matter (Schleiderer v. Gergen, 129 Minn. 248, 152 N. W. 541), it is not to be assumed that the burden

of proof is any less or any greater than in other civil cases involving fact issues. A close scrutiny of the evidence is in good faith always required in determining questions of fact.

■ We cannot say that the evidence justifies a conclusion that testatrix was mentally competent as a matter of law. Comprehensive evidence on both sides of the issue was presented to the jury with zeal and ability. A sharp conflict in evidence raised a fact question. Although the attesting witnesses asserted that testatrix possessed testamentary capacity, their testimony was not conclusive either way in the face of other evidence. The jury could reasonably find that she was unable to understand and keep in mind the nature and extent of her property and that as to the disposal of her residuary estate she required prompting. There was sufficient evidence to support a finding that over a period of years her mental powers had gradually failed. Whether this progressive deterioration of mind had reached such a stage at the time of the making of the will as to leave her bereft of testamentary capacity was a question of fact. It was not manifestly against the evidence to conclude that she no longer was able to understand and keep in mind, for a time sufficiently long to form a rational judgment concerning them, those who had a justifiable claim upon her bounty or remembrance. It may be conceded that there was much evidence to the contrary and that proponents made out a strong case of mental capacity, but this justifiable concession only serves to emphasize that a fact issue was involved. Church of St. Vincent De Paul v. Brannan, 97 Minn. 349, 107 N. W. 141. The jury, having the duty to determine credibility and to weigh the evidence, could very properly find that proponents had failed to sustain the burden of proof. In re Estate of Osbon, 205 Minn. 419, 286 N. W. 306. It is significant that in a former trial another jury came to the same conclusion. There is no assurance or likelihood that a third trial would change the result. Even if it be conceded that, if the question originally had been submitted to us, this court would have reached the conclusion that testatrix was mentally competent at the time she made her will, that furnishes no sufficient reason for overturn-

ing the findings of the trier of fact. Woodville v. Morrill, 130 Minn. 92, 153 N. W. 131; In re Estate of Christ, 166 Minn. 374, 208 N. W. 22; 1 Dunnell, Dig. & Supp. §§ 411 and 415. There is no basis for questioning the sufficiency of the evidence on appeal where such evidence justifies a finding either way. To justify a reversal of a jury's findings on the question of the competency of the testatrix, such findings, contrary to the situation in the instant case, must be clearly and manifestly against the evidence. Woodville v. Morrill, *supra;* 6 Dunnell, Dig. & Supp. § 10212; *Id.* §§ 411, 415. The verdict of testamentary incapacity must stand unless error in the trial prejudicial to appellants occurred.

■ In 1934, testatrix, accompanied by Mrs. Gladys Engebretson, visited friends in Tacoma, Washington, and while there she became ill. Dr. R. H. Beach, who treated and examined her at Tacoma, wrote a letter reporting her condition to Dr. G. I. Badeaux, personal physician of testatrix at Brainerd, and incidentally one of the principal legatees under the second will. The original letter, dated July 6, 1934, was lost by Dr. Badeaux, but, upon request, Dr. Beach forwarded him a carbon copy of this letter and also other correspondence. Over the strenuous objections of proponents (appellants here) on various grounds, contestants (respondents here) introduced the carbon copy of this letter in evidence. It reads in part as follows:

"I am writing you concerning Mrs. Forsythe who has been visiting in Seattle and Tacoma.

"About ten days ago she was found unconscious in the bathroom in Mrs. Crawford's home in Tacoma where she was staying at the time. I saw her the same day and *there was no question in my mind but what she had a cerebral hemorrhage.* She was unconscious that day but recovered quite rapidly and the next day there was no evidence of paralysis in the limbs or the face. There was evidence, however, of mental confusion. This has gradually improved and now she is feeling really good in every way." (Italics supplied.)

This letter was received in evidence, not as proof of what occurred at Tacoma, but for the limited purpose of cross-examining Dr. Badeaux as to such opinions as he had formed in 1934, as well as to opinions formed subsequently thereto, in regard to the condition of testatrix, and further to aid the jury to understand the effect of Dr. Badeaux's testimony and opinions at the trial. Obviously, and as indicated by subsequent rulings, the court in admitting the letter for the limited purpose stated proceeded on the theory that the letter was admissible insofar as Dr. Badeaux had used it as a basis for forming his opinions.

Later in the course of the trial, proponents, over the objections of contestants, introduced in evidence a carbon copy of a letter written by Dr. Beach on August 8, 1934, to Lillian E. Forsythe (a niece of testatrix), giving her a report on the illness of her aunt at Tacoma. This letter reads in part as follows:

"It is quite true that Mrs. Forsythe did have a very bad cold and a good deal of trouble as a result of the cold. *However, she did have what might be called a slight stroke or, at least, a claudication.* She was found unconscious in the bathroom where her friends had heard her fall. Her mental condition was bad for three or four days. She never knew just what happened to her and, of course, I did not tell her. She made a very good recovery and in due course of time, was able to make the trip home. I wrote a letter to Dr. Beaudeaux [sic] advising him of her condition." (Italics supplied.)

In his testimony, Dr. Badeaux stated that he had seen this later letter and had taken its contents into consideration in forming his opinion at the trial. The court admitted this letter in evidence for the limited purpose of examining Dr. Badeaux insofar as he had used it in forming his opinions at the trial.

Are proponents in a position to assert as prejudicial error the admission in evidence of the letter first above mentioned, or was the error, if any, waived and cured by proponents' introduction in evidence of the letter addressed to Lillian Forsythe? Both letters

were from Dr. Beach and dealt with the same subject matter, the illness of testatrix at Tacoma. Both letters had been taken into consideration by Dr. Badeaux in formulating his opinions in court as to any effect the illness might have had on the mentality of testatrix. Assuming, but not deciding, that the admission of the first letter was plainly and unfairly prejudicial to proponents, we need not here consider whether the second letter could, in the discretion of the court, have been admitted to rebut or neutralize the prejudicial effect of the first. 31 C. J. S., Evidence, § 190. If anything, the second letter was more prejudicial to proponents than the first, in that it stated that testatrix had suffered "what might be called a slight stroke or, at least, a claudication." All objections available to the admission of the first letter were equally applicable to the second. In introducing the second letter, proponents waived any error as to the admission of the first, and at best we have error without prejudice. Lloyd v. Simons, 90 Minn. 237, 244, 95 N. W. 903, 906. See, 1 Wigmore, Evidence (3 ed.) §§ 15 and 18, at p. 344; 6 Jones, Evidence (2 ed.) § 2524.

■ Furthermore, insofar as the first letter was hearsay and served as a basis for forming an expert medical opinion, no prejudicial error occurred, in that the facts set forth therein were corroborated and established by independent and competent testimony given by Gladys Engebretson, who, as a companion of testatrix on her visit to Tacoma, was an eyewitness to her attack and illness. Thompson v. Bankers Mut. Cas. Ins. Co. 128 Minn. 474, 477, 151 N. W. 180, 181, Ann. Cas. 1916A, 277, 278; Pete v. Lampi, 150 Minn. 423, 427, 185 N. W. 653, 654.

■ Certain assignments of error are directed to the rulings of the trial court permitting contestants, over the objections of proponents, to ask questions based on an assumption that testatrix had in fact suffered one or two strokes. It is elementary that it is not permissible to put to witnesses a question which assumes that a material fact has been proved, in the absence of evidence fairly establishing such fact. Jones, Evidence (3 ed.) § 843; 3 *Id.* (4 ed.) § 843; 70 C. J., Witnesses, §§ 706, 707. The court's rulings

were based on the assurance of contestants that evidence of strokes suffered by testatrix would subsequently be supplied in the course of the trial. Although proponents contend that no competent proof was adduced, the record indicates the contrary. We have the statement made by Dr. Badeaux to Mrs. Zander. In addition, proponents themselves introduced in evidence the letter written by Dr. Beach to Lillian Forsythe. Where contestants, over the objections of proponents, were permitted to ask questions based on an assumption of fact, for the proof of which no evidence had then been received, upon the express assurance that such essential proof would subsequently be supplied, it was obviously immaterial whether such essential proof was in fact produced by either contestants or proponents. Here, adequate evidence was supplied. In the light of Dr. Badeaux's careful explanation that a stroke does not necessarily impair the mental faculties, it is also to be observed that the somewhat frequent mention of strokes during the trial could have had no prejudicial effect.

▆▆▆ The court properly admitted testimony as to statements made to numerous witnesses by Mrs. Michael, one of the legatees, as to the mental and physical condition of testatrix. The rule that, where there are several legatees in a will, declarations or admissions by one of them tending to cast doubt on the decedent's testamentary capacity are not admissible where such legatee has not taken the stand to sustain the will has no application here, because Mrs. Michael died before the trial.[2] As an exception to the hearsay rule, older than the rule itself (Thayer, Evidence, p. 521), we have, however, this principle:

"Declarations made by a person since deceased as to facts relevant to the issue are admissible in evidence between third parties, when it appears that they were against his pecuniary interest and related to a matter of which he was personally cognizant, and that

[2]See, McAllister v. Rowland, 124 Minn. 27, 144 N. W. 412, Ann. Cas. 1915B, 1006; In re Estate of Knutson, 144 Minn. 111, 174 N. W. 617.

he had no probable motive to falsify the facts." 2 Dunnell, Dig. & Supp. § 3298.[3]

This latter principle is applicable. (1) Mrs. Michael was dead; (2) her statements were relevant to the issue of mental ·capacity; (3) she was cognizant of the facts; (4) circumstances indicated an absence of any motive to falsify the facts; (5) the statements when made were against her pecuniary interests under the 1937 will and also under the third codicil to the 1931 will.[4] This principle does not even require that the decedent be a party to the suit. Paine v. Crane, 112 Minn. 439, 128 N. W. 574. At the close of the case, upon the motion of proponents, this testimony was erroneously stricken. The error, however, was procured by proponents, and is neither prejudicial nor available to them as a basis for obtaining a new trial. 1 Dunnell, Dig. & Supp. § 419.

■ We need not consider whether the trial court was correct in its ruling in admitting in evidence, for impeachment purposes only, a certified copy of a guardianship petition signed by Mrs. Michael asking that she be appointed guardian of testatrix. The petition was clearly admissible as a declaration against interest by a person since deceased under the rule stated in the immediately preceding paragraph. It is not necessary to sustain a trial court's ruling on the basis of the reason given at the trial.[5]

[3]See, Minnesota cases cited in footnotes, 2 Dunnell, Dig. & Supp. § 3298; 20 Am. Jur., Evidence, §§ 556 and 610; 1 Jones, Evidence (4 ed.) §§ 323-325; 31 C. J. S., Evidence, § 218; 5 Wigmore, Evidence (3 ed.) § 1455, *et seq.*

[4]The modern tendency is to hold that the interest element need not be pecuniary or proprietary. Am. L. Inst., Model Code of Evidence, § 503; 21 Minn. L. Rev. 181; 36 Harv. L. Rev. 481; The Law of Evidence, Yale University Press, 1927, pp. 23-49; 5 Wigmore, Evidence (3 ed.) §§ 1476, 1477. See, dissenting opinion in State v. Voges, 197 Minn. 85, 266 N. W. 265.

[5]Davis v. Reichert, 197 Minn. 287, 290, 266 N. W. 855, 856; Merchants & Farmers State Bank v. Olson, 189 Minn. 528, 535, 250 N. W. 366, 369, 89 A. L. R. 1289; 1 Dunnell, Dig. & Supp. § 421; 3 Am. Jur., Appeal and Error, § 1008.

As to the admissibility of an order appointing a guardian for incompetency in determining testamentary capacity, see McAllister v. Rowland, 124 Minn. 27, 144 N. W. 412, Ann. Cas. 1915B, 1006; 2 Page, Wills, § 805.

▉▉▉▉ The trial court received in evidence a statement by Mr. Flanagan, the attorney who drew the 1931 will, to the effect that testatrix had told him, in preparing such prior will, that she had received all her money from her husband and that she was leaving the money in accordance with her agreement with him and according to his wishes, because he remembered her relatives in his will. Proponents objected to this testimony, on the ground that it was irrelevant to the issue of testamentary capacity in 1937. A prior will, however, together with relevant declarations of purpose thereto pertaining, dating from a time not too remote and tending to show the fixed and settled purpose of the testatrix and any sudden or unexplained change in such purpose, are proper evidence to consider in determining the presence or absence of testamentary capacity in the making of a later will.[6] Similar evidence is admissible as to undue influence. In re Estate of Osbon, 205 Minn. 419, 425, 286 N. W. 306, 310. Relevant evidence of a progressive and gradual mental decline over a period of years may be admissible according to the circumstances of each case. Schleiderer v. Gergen, 129 Minn. 248, 152 N. W. 541; 6 Dunnell, Dig. § 10210. Remoteness of time affects the weight of such evidence rather than its admissibility. In re Estate of Lefevre, 102 Mich. 568, 61 N. W. 3. No hard and fast rule can be laid down to fix the limits of reasonable time as to remoteness. The circumstances of each case must control, and the determination of the trial judge is practically final.[7] We cannot here say that the trial court abused its discretion. The history of events leading from the first will to the execution of the 1937 will and thenceforth until death in 1941, under the circumstances of this case, constituted a connected, logical, and relevant sequence of evidentiary facts which could reasonably be considered by the jury as a basis for finding a progressive mental deterioration fatal

[6] Page, Wills, § 798; 1 Schouler, Wills, Executors and Administrators (6 ed.) § 219; In re Estate of Bose, 136 Neb. 156, 285 N. W. 319.

[7] In re Pinney's Will, 27 Minn. 280, 6 N. W. 791, 7 N. W. 144; McAllister v. Rowland, 124 Minn. 27, 144 N. W. 412, Ann. Cas. 1915B, 1006; 6 Dunnell, Dig. & Supp. § 10210; 2 Page, Wills, § 796.

to testamentary capacity. In re Estate of Bose, 136 Neb. 156, 285 N. W. 319; Schleiderer v. Gergen, 129 Minn. 248, 152 N. W. 541.

As part of the general picture showing the gradual mental decline of testatrix, other testimony was admitted to show a change in her attitude and conduct toward certain beneficiaries under her former will who had been for years the established objects of her charity or the recipients of her closest friendship. Evidence that testatrix changed her feelings toward the natural objects of her bounty was not controlling in establishing a lack of mental capacity but could be considered by the trier of fact. 2 Page, Wills, § 796; 1 Schouler, Wills, Executors and Administrators (6 ed.) § 221. Such evidence may indicate whether the will is a natural, reasonable, and likely one under all the circumstances, and is competent for what light it throws on testamentary capacity.

"* * * The rule should be applied cautiously. It should be understood that the testator may make an unjust, unreasonable, and unfair will if he chooses. He may dispose of his property as freely by will as he may give it in his lifetime. Nor does the fairness and reasonableness of the disposition prove competency or the opposite. Only when there is evidence upon the issue may such facts be used for the light they give." In re Estate of Jensen, 185 Minn. 284, 288, 240 N. W. 656, 657.

In view of the testimony given by Mr. Flanagan that testatrix had declared to him that she made her 1931 will in compliance with a promise to her husband and in the light of the evidence as a whole, we cannot say that Julius Viken's testimony that Albert Forsythe, predeceased husband of testatrix, had said that he and Mrs. Forsythe regarded Mr. Puschinsky highly and had desired to adopt him was prejudicial error. This testimony only supplemented the declaration of testatrix as to her purpose in making her first will.

Proponents allege error in reception of testimony concerning Edwin C. Howell, a son of one of the principal legatees, Mrs. Michael. It is elementary that the nature and terms of a will itself are to

be judicially regarded as an essential and important part of the evidence of testamentary capacity. Hammond v. Dike, 42 Minn. 273, 44 N. W. 61, 18 A. S. R. 503. In comparing the wills and codicils here involved and in giving consideration to the nature and terms of the second will for whatever light might thereby be shed as to the existence of mental capacity, the testimony as to Mr. Howell was pertinent. Testatrix, in executing her 1937 will, knew, or should have known, that Mrs. Michael, a woman of approximately her own age, might reasonably not even survive her, with the result that a substantial legacy would be nothing more than a windfall to Mrs. Michael's heirs, including Mr. Howell, who were strangers to testatrix. The earlier will, and specifically the third codicil thereto, giving Mrs. Michael a one-ninth share in the estate, expressly provided that if the legatees did not survive her their share should go to the residuary estate. It was for the jury to consider the significance, if any, of the failure of testatrix in her final will to make some similar provision against the contingency that a substantial part of her estate might go to strangers to the exclusion of her own church, her own half sister, and lifelong friends. The testimony identifying the heirs of a deceased legatee was pertinent and relevant, and, in the discretion of the trial court, was admissible to aid the jury to understand the effect and operation of the terms of the will. Insofar as the testimony related to the economic status of Mr. Howell, it is difficult to justify its admission, but it was not prejudicial error.

Affirmed.