## HANS RASMUSSEN, AS GUARDIAN FOR MATHEW LEHMAN v. F. J. EVANS, PROPONENT OF THE WILL OF KATIE HOGSTADT, DECEASED.[1]

November 25, 1921.

No. 22,241.

**Will — definitions of undue influence and mental capacity — burden of proof.**

1. To constitute undue influence such as to avoid a will the testator must be so controlled or affected by persuasion or pressure that he does not understandingly and voluntarily make a will, and the burden of

[1]Reported in 185 N W. 297.

proof of undue influence is upon the contestant. To constitute mental capacity to make a will, the testator must have such mental ability as to comprehend his relations to others having claims upon his bounty, the nature and extent of his property, and the effect of his will upon it, and the burden of proving such mental capacity is upon the proponent.

**Findings supported by evidence.**

2. Applying these tests, the evidence sustains the trial court's finding that the will involved was not executed through undue influence, and that the testatrix was of sufficient capacity to make it.

F. J. Evans petitioned the probate court for Otter Tail county to admit to probate the last will and testament of Katie Hogstadt, deceased. Mathew Lehman, her father and heir at law, filed objections to the probate of the will. The objections were overruled, and contestant appealed to the district court for that county. The appeal was heard by Parsons, J., who made findings and affirmed the order of the probate court admitting the will. From an order denying his motion for a new trial, Mathew Lehman appealed. Affirmed.

*James A. Brown, Anton Thompson* and *F. A. Ontjes,* for appellant. *N. F. Field* and *M. J. Daly,* for respondent.

DIBELL, J.

This is an appeal by the guardian of Mathew Lehman, the father and sole heir and one of the beneficiaries under the will of Katie Hogstadt, deceased, from an order of the district court of Otter Tail county denying a new trial. The trial resulted in findings sustaining the will and affirming the order of the probate court. The court found that there was no undue influence and that the testatrix had sufficient mental capacity. The only questions are whether the evidence sustains these findings.

1. To constitute undue influence the mind of the testator must be so controlled or affected by persuasion or pressure that he does not act understandingly and voluntarily, but is subject to the direction of another, to whose purpose his will gives expression, and the burden of proof is upon the contestant. Mitchell v. Mitchell, 43 Minn. 73, 44 N. W. 885; Schmidt v. Schmidt, 47 Minn. 451, 50 N. W. 598; Buck v.

Buck, 122 Minn. 463, 142 N. W. 729, and cases cited. The term in a way defines itself. Legitimate argument or persuasion is not condemned. Usually the question whether undue influence has been exercised is one of fact for the trial court. The appellate court, under our practice, inquires only as to the sufficiency of the evidence to sustain the conclusion reached.

If the testator has the mental ability to comprehend his relations to others having claims upon his bounty, the nature and extent of his property, and the effect of his will upon it, he has the required mental capacity. Buck v. Buck, 126 Minn. 275, 148 N. W. 117, and cases cited. Schleiderer v. Gergen, 129 Minn. 248, 152 N. W. 541; Woodville v. Morrill, 130 Minn. 92, 153 N. W. 131. The burden of proof of the fact of mental capacity is upon the proponent. In re Layman's Will, 40 Minn. 371, 42 N. W. 286; Kennedy v. Kelly, 123 Minn. 259, 143 N. W. 726. If the testator responds to the tests stated it is enough, though he is mentally or physically weak or in ill health, and though he is not able to carry on complicated business negotiations, or protect imself in a business controversy with others. It has been said that less than contractual capacity suffices. Like the question of undue influence, the question of mental capacity is usually one of fact, of which the supreme court has only the limited review stated.

2. The claim of undue influence gave the trial court no trouble. There is no difficulty with it here.

The contestant's claim is that Elof Swenson, a half nephew of the testator's deceased husband and the husband of her half sister, unduly influenced the making of the will. He had the opportunity, for the decedent lived with him. He had an interest, for he would take nothing by descent. Her father was the sole heir. The court found some circumstances unfavorable to Swenson, some mercenary motives, and some acts which were subject to criticism, but saw no justification for a finding that he exercised undue influence. Its finding that there was no undue influence is well sustained.

With the question of the mental capacity of the decedent, the trial court had more difficulty. The testatrix was born in Germany. She came to this country when about 19 years of age. Her father, who had

emigrated a few years before, then lived at Mason City, Iowa. She worked out for a while, but soon married. She and her husband lived in South Dakota and accumulated land. Her husband died in 1910. Swenson was a native of Sweden and came to this country in 1907, when 16 years of age, to live with the testatrix and her husband. They had no children. He was a member of the family and was treated somewhat like a son. He married Mrs. Hogstadt's half sister.

The decedent worked hard pioneering with her husband, and at 54 years of age was broken in body. For several years she had been poorly. She had a stroke of paralysis in the latter part of 1917, and a second and severe stroke on November 4, 1918. The will was made on November 14, 1918. She died on November 25, 1918. Her death was expected.

The subscribing witnesses of the will were of the opinion that she had sufficient mental capacity. So was the lawyer who drew it and was present at the execution. There were many other witnesses of like opinion. Her will remembered her blood relatives. She gave $4,000 to her father. To ten other relatives she gave a total of $17,000, ranging in amounts from $1,000 to $4,000. She made other relatives her residuary legatees. She gave Swenson the interest coming from land contracts amounting to $26,500, bearing interest at 5½ per cent, and due on or before March 1, 1932. This was substantially all her property. It was the request of the testatrix, not made binding upon the executor, that until the money was realized on the farm land contract there should be no distribution. The bequest to Swenson was not such as to suggest lack of capacity. He had been with her long. They had disagreed and quarreled, but he had her affection. She seems to have had in mind her property, and those having natural claims upon her bounty.

The distribution of her property was not complicated. The will, however, was worked out in great detail and with exactness and considerable circumstance. It required some concentration of mind to appreciate all its bearings. The testimony is ample that it was explained to her, item by item, and that she seemed to understand it. The testimony is that she corrected a mistake as to the amount coming from her

village property in South Dakota, and that she chose her executor without suggestion.

The record is a long one. It is not practicable nor would it be profitable to review the evidence in detail. The trial court gave it studious consideration. We have gone over it carefully, having in mind that it is our function to determine whether it sustains the finding, not to make one. It is not necessary to place an affirmance upon the ground that the finding is not manifestly against the evidence, although that would be sufficient. It is right to say that it is well supported by the evidence. This is not saying that a contrary finding would not be upheld. But the finding, so far as we can get the effect of the evidence from a position not so favorable as that of the trial court, was the proper one.

Order affirmed.