# IN RE ESTATE OF MARY WEBER, DECEASED.[1]

June 5, 1925.

No. 24,568.

**Testatrix did not have testamentary capacity.**

1. The evidence sufficiently supports the verdict to the effect that testatrix did not have testamentary capacity when she signed the will.

**Hypothetical question to medical expert as to testamentary capacity.**

2. A medical expert may, upon a properly framed hypothetical question, give an opinion as to testamentary capacity of the person involved. Such question may be based upon the facts adduced in evidence most favorable to the theory of the party calling the expert.

**When indirect testimony is admissible.**

3. It is not improper to receive testimony in a case which incidentally or indirectly bears on the issues involved.

**Improper argument to jury reviewable, when.**

4. Misconduct of an attorney in making improper argument to a jury cannot be assigned as error unless objection was made at the time the improper language was used.

1. See Wills, 40 Cyc. p. 1023.
2. See Evidence, 22 C. J. p. 668, § 759; p. 712, §800; Wills, 40 Cyc. p. 1037.
3. See Evidence, 22 C. J. p. 164, § 91.
4. See Appeal and Error, 3 C. J. p. 864, § 763.

1. See notes in 27 L. R. A. (N .S.) 2; L. R. A. 1915A, 444; 28 R. C. L. p. 86; 4 R. C. L. Supp. 1799.

From an order of the probate court for Hennepin county, Dahl, J., allowing the last will and testament of Mary Weber, deceased, Louise Rankin appealed to the district court where the appeal was heard by Bardwell, J., and a jury whose finding is stated in the first paragraph of the opinion. From an order denying her motion

[1]Reported in 204 N. W. 52.

for judgment notwithstanding the verdict or for a new trial, Eleanor Stevens Weber appealed.   Affirmed.

*Allen & Fletcher* and *Franklin Petri*, for appellant.

*Brady, Robertson & Bonner*, for respondent.

HOLT, J.

The appeal involves the question of the testamentary capacity of Mary Weber, deceased. She made a will giving the bulk of her property to her two sons. To the one daughter was bequeathed only $50 and the same amount to the child of a deceased daughter. One of the sons died after testatrix, leaving a wife but no children. Louise Rankin, the surviving daughter, unsuccessfully contested the will in the probate court. On appeal to the district court, a jury found that Mary Weber did not have testamentary capacity when the will was executed. From the order denying judgment notwithstanding the verdict or a new trial, the widow of the deceased son appeals.

It is forcibly contended that the evidence does not support the verdict. The record is clear that Mrs. Weber was mentally sound unless temporarily unbalanced through illness when the will was made.

About the middle of December, 1917, when she was past 73 years old, Mrs. Weber had a severe attack of diphtheria. The attending physician did not expect her to survive and so informed the family. On the fifteenth another doctor was called into consultation. On the morning of the eighteenth a lawyer appeared with the will drawn. It probably had been prepared on the fifteenth, for that date written by typewriter, as is the entire will, has a line drawn through it with a pen and above is written with the same ink the word "eighteenth." Testatrix signed it in presence of the lawyer, the nurse and a doctor who was making a professional call at the instance of the attending physician. These three subscribed the will as witnesses. The lawyer is dead. The other two testified.

The physician's deposition is positive that testatrix was in full possession of her mental faculties when the will was executed. The nurse testified that Mrs. Weber was flighty at times, that she had

high fever, and that she mumbled to herself. The daughter also was attending her mother most of the time. She testified that she saw the instrument signed, but did not know it was a will; that deceased was then unable to recognize her, and inquired who she was; that deceased moaned and talked incoherently to herself a great deal. Some medical experts gave opinion that she was not competent to make a will; others that she was.

The surrounding circumstances speak for and against the proposition of her competency. No friction appears to have existed between herself and any child. When their father died, they had all assigned their shares to their mother, and naturally one would expect that all would receive equal treatment from her. On the other hand, it is argued that she lived for several years after the will was made, and letting it stand the way it had been drawn indicates an intention not to treat them alike. There can be no question that Mrs. Weber was perfectly capable of making a will after she recovered her health. However, the burden was on the proponent to prove testatrix competent when the will was executed. The testimony referred to seems to us to take the question of her testamentary capacity to the jury.

The rule governing cases of this sort has been often stated. Schleiderer v. Gergen, 129 Minn. 248, 152 N. W. 541.; Rasmussen v. Evans, 150 Minn. 319, 185 N. W. 297. If testator is in a rational and lucid state of mind when the will is executed so that he is then able intelligently to give directions for the disposition of his property, the will is valid, however feeble or irrational he may have been immediately preceding or succeeding, Church of St. Vincent de Paul v. Brannan, 97 Minn. 349, 107 N. W. 141. While feebleness, severe suffering, disregard of what might be considered expectations of the objects of testator's bounties may be of some value in determining the presence of mental capacity, they are not at all decisive. The will may dispose of the property unwisely and unjustly in the judgment of the court or jury, nevertheless it should stand if testator had mental capacity and was free from undue influence. In re Will of Jernberg, 153 Minn. 458, 190 N. W. 990. Testamentary capacity is a fact question, which in the instant case

has been determined against the proponent of the will by the jury. The trial court approved the verdict, and we think there is evidence to sustain it. It must therefore stand unless error in the trial prejudicial to appellant occurred.

Medical experts were permitted to give an opinion as to testamentary capacity over appellant's objection that it was not the subject of expert testimony and the hypothetical question not a fair and complete statement of the facts, and incompetent, irrelevant and immaterial. It is true; the question put to the experts was the one the jury had to answer, but the cases hold it proper to obtain the opinion of medical experts upon the testamentary capacity of a testator. The value may be small, but is considered of some aid and admissible. In re Storer's Will, 28 Minn. 9, 8 N. W. 827; Buck v. Buck, 126 Minn. 275, 148 N. W. 117. When the court asked appellant wherein the hypothetical question was not fair, respondent modified the same in one instance to meet the objection pointed out. The one which appeals to us as stating the evidence not quite fairly is the one asked Dr. Hamilton (folios 346, 347, Record), but we do not think that ought to call for a new trial, for in the cross-examination, appellant had the opportunity to eliminate and did eliminate whatever was unfair in the question as first put and answered. A hypothetical question may be framed upon as favorable a view of the facts as the testimony for the party propounding the question may warrant. If not so framed the objector should call attention to facts omitted or overstated, for it is difficult for the court as well as opposing counsel to have all the testimony in mind.

There are other matters which are claimed to have prevented appellant from having a fair trial. We think it proper to show that the children had assigned to testatrix their interest in their father's estate. For it is a legitimate argument to be made to a jury that a mother who has received an equal amount of property from each of her children, would not bequeath it to them in grossly unequal shares unless irrational. True, it did not incline the jury in proponent's favor to learn that she had only been married to the chief beneficiary a few weeks before he died. However, parties

to the litigation cannot complain of a disclosure as to how or when they acquired the right to litigate the issue in dispute. That testatrix some time after the making of the will in a conversation with contestant's husband made statements as to the disposition of her property inconsistent with the terms of the will was of some probative value under contestant's theory of the case.

The record does not raise the question of misconduct of counsel in the final argument to the jury. The address appears in full in the record, but at no place was there any objection made to the language used. There was only one interruption and that was when appellant's counsel questioned whether contestant had testified that her mother was "fond of" the grandchild, and no error is or could be assigned on that incident. In order to assign error on misconduct of counsel in the argument to the jury, objection must be made at the moment the argument becomes improper, so that the trial court may by admonition to the jury, if possible, counteract its evil effect. Counsel cannot sit silently by while the objectionable argument is delivered, and take exception if the verdict is adverse. The trial court's attention must be called to the misconduct when it occurs and its action or ruling then requested.

The order is affirmed.