## NOAH MOQUIN v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

June 27, 1930.

No. 27,842.

[1]Reported in 231 N. W. 829.

*John E. Palmer, James L. Hetland* and *Fryberger, Fulton & Boyle,* for appellant.

*Davis, Michel & Yaeger* and *Swanson, Swanson & Swanson,* for respondent.

WILSON, C. J.

Defendant appealed from an order denying its alternative motion for judgment non obstante or a new trial.

Plaintiff, 46 years old, has worked for defendant 18 years. He was working as a brakeman at the time of his injury, February 27, 1928. The conductor was Mr. Rennie, and Mr. Dan G. Carr was the other brakeman. Plaintiff was injured at Cloverton, Minne-

sota, because of the derailment of a box-car upon which he was riding while engaged in his work. The main line runs north and south. The depot is to the east. To the west is a passing track. Farther to the west is a house track. A street crossing passes over the tracks just south of the depot.

Early in the morning the conductor received an order from the chief train dispatcher saying: "Do a good job of flanging today and advise what tracks you flange out." The conductor advised the two brakemen thereof and told them to look after the work. Flanging is done with an apparatus called a "flanger" which is fitted over the front of the pilot of the locomotive. It is raised and lowered by air power and operated by the engineer. It is operated by the engine moving forward. Between the rails it extends one and three-fourths inches below the top of the rails. Its purpose is to throw out the snow from between the rails so that the flanges of the car wheels will not come in contact with ice or snow and be derailed. It moves snow, not hard ice. A "bull-dozer" is used for deeper snow work. It is the duty of section men to remove ice and snow from crossings and switches only.

Flanging was done at each of the villages until the train reached Cloverton. There the house track was under snow. Perhaps it was 8 to 20 inches deep. On the southerly portion of the house track was an empty car. A short distance to the north from this empty car and on the house track was a box-car loaded with ties. This car stood near the street crossing. It was to be picked up and put in the train. It stood almost midway on the house track. The conductor gave directions to plaintiff, saying: "Tell Dan [Mr. Carr, the head brakeman] to back in on the house track and after he couples onto that car of ties, to shove down, back down, on the house track and flange it out." Thereupon plaintiff went to the crossing on the house track. He then climbed upon the car loaded with ties and released the brakes. The engine pushed the empty car up to the car of ties, and brakeman Carr also climbed upon the latter. The movement then, as these men intended, was to go northerly to the north end of the house track and flange back there-

on, pass on to the main line, attach the carload of ties to the train, then set the empty car back on the house track, then move the engine back to the train. But soon after starting the northerly movement of the car with the ties it derailed, throwing plaintiff to the ground, causing his injuries.

Under the plaintiff's testimony he was acting under orders of the conductor and engaged in a switching movement. His testimony is to the effect that under the snow ice had been permitted to accumulate so as to be over an inch thick above the rails. The claim is that this was known to defendant's section foreman; that such ice was the cause of the derailment. Plaintiff testified that he had no duty in reference to the flanging operation but that his presence on the derailed car was due to his duty relative to putting that car in the train.

Defendant denied plaintiff was engaged in a switching movement and denied the presence of such ice. It claimed plaintiff was engaged in a flanging movement. It further urged that the proper way to do the flanging on the house track would have been for the locomotive to back north on the side track and then flange the house track by a forward southerly movement. It also now claims that such deep snow on the house track was sufficient to cause a derailment. It is said that this probably was intensified by the fact that the snow was slightly thawing. Defendant's claim is that the house track was dangerous, not because of the presence of ice as claimed, but because of the deep, damp snow, and that plaintiff in his own way was engaged in making a dangerous place safe.

There was a temporary crossing over the house track only. It was used by men crossing it with teams and sleds and by teams dragging the eveners behind the horses with logging chains. Plaintiff's evidence is that ice was thus formed an inch or two above the rails; that it was hard. Different witnesses said that they saw it; that when the car upon which plaintiff was riding struck this ice at this crossing it was derailed. Defendant's evidence puts the derailment before it reached the crossing and attempts to attribute the derailment to the presence of the snow only.

Under the evidence it was for the jury to determine whether plain-

tiff's claims were true. Defendant's claims were presented in opposition to the plaintiff's contention. This included the question of negligence, contributory negligence, and assumption of risk. The jury has committed us to plaintiff's version. The evidence is sufficient to sustain these findings.

■ The court instructed the jury that plaintiff claimed that defendant failed to exercise proper precautions to ascertain whether the track was in a reasonably safe condition for the passage of cars. Then in two places in the charge the court made reference to whether the house track was safe. He should have used the word "reasonably" before the word "safe." The court did charge the jury that defendant must exercise a degree of care commensurate with the risk. It was also stated that if the snow and ice remained upon the track a sufficient length of time to have enabled the defendant, in the exercise of ordinary and reasonable care, to have discovered its presence it would be negligent if the condition was as claimed.

Plaintiff assigns as error the failure of the court to use the word "reasonably" before the word "safe" to which we have referred. Concededly, it should have been used. Obviously, its omission was an inadvertence. Counsel failed to call the court's attention to it. Under the well established rule it cannot now be urged as error. It is to be noted that the court told the jury that plaintiff claimed defendant had failed to exercise proper precaution to ascertain whether the track was in a "reasonably safe condition." The jury was told that the law required defendant to "exercise a degree of care commensurate with the risks to prevent the accumulation of ice and snow in such quantity, form and location as to be a menace to the safety of the employes working in its yard."

The rule is that defendant was bound to exercise ordinary care only to keep the house track in a reasonably safe condition for service. We are of the opinion that the instructions taken as a whole did not lead the jury to believe that the defendant was an insurer of the safety of the place to work. Defendant's duty is to guard against only such accidents as are likely to happen from the usual and common experience of mankind.

■ Upon the trial defendant put in evidence its rule 102 reading:

"102. **Movement Over Highway Crossings.** In the movement of engines with or without cars switching over highway grade crossings within yard limits, commercial and station sidings, mine, industrial, or passing sidings; unless there is a crossing watchman at his post, or the gates are down, a member of the train or engine crew will protect highway traffic at crossings by preceding each movement over the crossings and see that all highway traffic has been stopped before signalling the engineman to proceed."

When the court instructed the jury it withdrew this exhibit rule 102 from its consideration. This was not error. Upon the record it is doubtful if plaintiff had violated the rule; but, if so, such violation had no causal connection with the injury.

■ Defendant assigns as error the refusal of the court to give its request No. 7, to the effect that the plaintiff in his employment assumed the risks arising from dangers ordinarily and naturally incident thereto; and that he also assumed the risks arising from dangers created by the master's negligence, provided he knew, or in the exercise of ordinary care should have known, of such dangers and appreciated the risks arising therefrom. The request also was to the effect that the employe is bound to inform himself by all reasonable means concerning the perils of his employment; that he must exercise his intelligence; and that when a situation suggests investigation and inspection in order that its dangers may be fully disclosed he is under the obligation of investigation and inspection.

The test relative to assumption of risk is not in the exercise of ordinary care to discover dangers by the employe, but whether the fact is known or plainly observable by him. He is not charged by law with the assumption of risk arising out of an unsafe place to work provided by his employer unless his employment was of such a nature as to bring to his attention and cause him to realize and comprehend the dangers incident to working in or at such place. An employe assumes the risk of dangers normally incident to the work in which he voluntarily engages so long as they are not attributable to the employer's negligence. The employe has a right to

assume that his employer has exercised proper care with respect to providing a safe place to work. Gila Valley, G. & N. Ry. Co. v. Hall, 232 U. S. 94, 34 S. Ct. 229, 58 L. ed. 521; Chesapeake & O. Ry. Co. v. De Atley, 241 U. S. 310, 36 S. Ct. 564, 60 L. ed. 1016; Suess v. Arrowhead S. P. Co. 180 Minn. 21, 230 N. W. 125.

■ The law is that an employe cannot recover damages for injury caused by the defect which his work required him to repair. Broderick v. St. Paul City Ry. Co. 74 Minn. 163, 77 N. W. 28. Defendant now argues that it was the duty of the court so to instruct the jury. Defendant requested no such instruction. The court instructed as to contributory negligence and assumption of risk. At the request of defendant the court gave this charge:

"If you find from the evidence that the plaintiff, Moquin, was chargeable with the duty of seeing that the house track was safe before backing the car which was derailed into the snow on the track, and if you find that the accident and injury resulted solely from his failure to perform such duty and to ascertain that said track was safe before backing the car into the snow, then I charge you as a matter of law that the plaintiff cannot recover in this action and your verdict must be for the defendant."

Upon trial defendant continually showed hostility toward plaintiff's theory of the case, claiming that the movement was a flanging movement and not a switching movement as claimed by plaintiff. One of its many exceptions was in this form:

"The defendant excepts to all that part of the court's charge which, in substance, tells them that it was the duty of the defendant to furnish a reasonably safe place for the plaintiff to work, inasmuch as there is no evidence of any nature or description that the place to work was not safe, and on the further ground that these men, including the plaintiff, were furnished with perfectly safe equipment for the purpose of taking care of the snow and make the track safe for use."

The record contains over 2,000 folios, but we are unable to find any reference to the rule of law of the Broderick case, 74 Minn. 163,

77 N. W. 28. We are compelled to conclude that this specific rule was never mentioned upon the trial. Defendant's attitude toward assumption of risk and contributory negligence is made clear. Its large number of requests indicate that they were to cover defendant's theory of the case. Upon the record the failure to give such an instruction was not error, although it would have been a proper instruction had it been called to the attention of the court.

■ Appellant assigns misconduct of counsel in the argument to the jury. No objections or exceptions were made and taken at the time of the argument. The record was not protected. Counsel for defendant adopted a course which this court does not approve. They had the argument of plaintiff's counsel taken and made a part of the settled case and then sought to assign as error portions thereof in the motion for a new trial. Little justification can be made of parts of the argument. When counsel uses in his argument to the jury improper and prejudicial language, it is the duty of opposing counsel then and there to interrupt and have such language put upon the record and to ask the court to instruct the jury to disregard it and also to take an exception thereto if he thinks it advisable. It is the duty of the court to have the record show substantially what has been said in the course of the argument to which the objection is made. In the absence of objection from counsel, it may become the duty of the court to act on its own motion. The rule of procedure in such case rests upon deep principles from which we should not depart. It is the settled practice. Christofferson v. Custom Laundry Co. 179 Minn. 325, 229 N. W. 136; State v. Peterson, 167 Minn. 216, 208 N. W. 761; State v. Cotter, 167 Minn. 263, 209 N. W. 4; In re Estate of Weber, 163 Minn. 389, 204 N. W. 52; Seitz v. Claybourne, 181 Minn. 4, 231 N. W. 714. It gives an opportunity for correction or retraction.

■ Plaintiff was 46 years of age. He earned about $3,000 per year. His expectancy was 25.54 years. The shin bone was broken in several pieces in an oblique manner from the ankle joint upward; there were two long parallel breaks, and then there was some splintering between them. It was a comminuted fracture. One of

the breaks went down into the end of the bone at the ankle joint. The shin bone is now enlarged to the extent of three-fourths of an inch when measured around, and it is changed in shape and contour and has very little movement. It is inclined to be stiff. There is a firm, bony union. The right leg is one-fourth of an inch shorter. There was also a slight fracture in the smaller bone of this leg. The leg was put in a cast in course of treatment. The left foot and ankle were swollen and discolored. Plaintiff does not now walk normally. The elbow joint was injured and is abnormal. There is a diminished sensation of feeling in the last two fingers. There is a permanent impairment in his use of the right leg and right arm. There was an injury to the coccyx bone which prevents plaintiff's sitting straight and necessitates a leaning forward. The permanence thereof is left uncertain. He will not be able to work as a railroad brakeman. There will be much work that he can do. He has suffered pain. Some of his pain in the back may be due to strained ligaments. He has lost sleep and weight. At the time of trial he had lost about 15 months' time and was still unable to work.

We cannot minimize the importance of the claim that a man who has spent so many years in following his chosen calling suffers a peculiar hardship when he is incapacitated to continue therein and is thereby forced, at plaintiff's age, to take up another line of work.

The verdict was $27,500. From the entire record before us we are of the opinion that the verdict is excessive because of passion and prejudice. A new trial is granted unless plaintiff shall, within 15 days after the filing of the remittitur in the district court, file a written consent to a reduction of the verdict to $22,500, in which event the verdict so reduced shall stand.

Affirmed on condition.

DIBELL, J. (dissenting in part).

I do not agree that passion or prejudice is shown and that there should be a reduction of damages. The verdict should stand. Otherwise, I am in accord with the opinion.

STONE, J. (dissenting).

Settled practice notwithstanding, I hesitate to say that a plaintiff shall not have more than so much by way of damages. That is the jury's function. The condition that plaintiff may have a new trial is an apparent rather than a real benefit to him. On the other side, we are refusing defendant the right to trial by another jury which, it is to be presumed, would try *all* the issues fairly. The opinion demonstrates that the first jury yielded to passion and prejudice in assessing damages. There can be no escape from that conclusion when the verdict is compared with those customarily rendered where a farmer or ordinary artisan is the plaintiff and the defendant not a railway company. The kind of argument resorted to by plaintiff, together with the excessive verdict, call for a new trial.

To me the result seems a compromise with settled rules. We find in the verdict plain evidence of the influence on the jury of passion and prejudice and in the argument of counsel for plaintiff its probable source. Yet we grant to the aggrieved party but a small portion of the relief such a combination normally demands. It is for that reason I am unable to agree to the result.

