JOHN S. SIGVERTSEN v. MANEY BROTHERS MILL & ELEVATOR COMPANY.[1]

January 23, 1931.

No. 28,139.

[1]Reported in 234 N. W. 688.

*William E. MacGregor* and *N. D. Bessesen,* for appellant.

*V. M. Petersen* and *Ohman, Fryberger & Wangaard,* for respondent.

WILSON, C. J.

Defendant appealed from an order denying its alternative motion for judgment non obstante or a new trial.

Plaintiff's employment by defendant as a flour salesman is admitted. The controversy is as to whether he was to have a bonus or commission on the profits or income in addition to his monthly salary, automobile, and trade expense allowance. He prosecutes this action to collect alleged commissions. He states three causes of action, stating each year separately from June 30, beginning with June 30, 1925. Plaintiff's verdict for $3,097.78 was reduced to $2,895.33 by the court because of an error in the jury's calculation.

The complaint alleged an agreement including the commission of 25 per cent of the net profits. Near the adjournment of court on' the second day of the trial the court suggested to counsel that if defendant had an audit covering the three-year period in question counsel should see if they "couldn't get together." Defendant's counsel thereupon produced such audit and loaned it to plaintiff's counsel. The following morning the trial proceeded as before. About noon on that day the audit was put in evidence without objection. It showed that there were no net profits in the ordinary meaning of net profits. Near the close of plaintiff's case he was given, over defendant's objection, permission to amend his com-

plaint so as to allege that the parties had agreed that the 25 per cent of the net profits should be arrived at by ascertaining the gross profit of the flour department (defendant being a dealer in feeds and feed stuff) for the past current year, deducting 50 per cent thereof to cover all overhead of the whole business including the drawing account of plaintiff and the direct and indirect expense of the flour department and that the 50 per cent remaining should be regarded as the net profit, upon which plaintiff's commission was to be computed at the rate of 25 per cent. The effect of the amendment was to change plaintiff's claim from one of 25 per cent of the net profits to one of 12½ per cent of the gross profits.

■ Much complaint is made of the allowance of the amendment. The amendment may have had peculiar consequences, which we believe more attributable to fate than to an error of the court. It is also claimed that the court erred in suggesting that counsel "get together," it being inferentially suggested that counsel was coerced by the court. Obviously the court had in mind that the audit would be the most expeditious method of establishing the amount of income, net or gross. It was but a suggestion and without error.

Defendant's counsel then suggested that the amendment was prejudicial because he let the audit go in evidence without objection. Thereupon the court struck the exhibit (audit) from the evidence. The jury were instructed to disregard it. But it was later received by consent for all purposes.

Defendant's counsel persisted in the claim that the allowance of the amendment was prejudicial. The trial court was of the opinion that there was a variance and stated that in the absence of the amendment defendant was probably entitled to a directed verdict. The court was of the opinion however that defendant was not misled or prejudiced by the amendment. It was pointed out that if the amendment had been proposed at the opening of the trial it would have been promptly allowed. The case had been on trial for two days at the probable inconvenience and expense of both parties. Upon the allowance of the amendment the court offered to adjourn for three days if defendant so desired so that it could better

prepare to meet the new issue, but defendant's counsel did not care for the delay. From an examination of the record, disclosing much colloquy, we cannot say that the trial court abused its discretion in allowing the amendment.

■ Counsel for defendant makes a vigorous assault upon the sufficiency of the evidence to support the verdict. There is much to provoke this. Yet there are two sides to the question; and, however incredible plaintiff's testimony and conduct may seem to some, the jury was the judge of his credibility and there are certain circumstances that tend to corroborate him. We will not discuss the question at length. It is sufficient to point to one of several circumstances. Under plaintiff's amended claim his commission in the first year ending June 30, 1926, was $1,538.13. He testifies that defendant put off payment from time to time. In December following, defendant executed and delivered to plaintiff two stock certificates covering capital stock in defendant corporation of the face or par value of $1,500, which is $38.13 less than the full amount of the commissions which plaintiff claims were then due. He testifies that defendant agreed to pay the $38.13. Defendant explains the stock certificates, which it later bought from plaintiff, as a Christmas present. An older employe was given much less. Yet the answer alleged that the stock was given as a bonus or commission under a misapprehension that there had been a net profit in the flour department. This transaction may have had much influence with the jury. It is also claimed that no apportionment of the general overhead to the flour department was ever made until the audit which was put in evidence. This audit seems to have been made at or near the time of trial, and it is claimed that the apportionment was arbitrary as defendant dictated and that defendant purposely loaded the flour department with excessive charges to make it show a loss. There are numerous things in the record tending to lead one, as it apparently did the trial court, to believe that the testimony of plaintiff and one of defendant's officers "is in a measure discredited by none too scrupulous coloring at points which were considered critical." We find no rule of law permitting us

to conclude from the record before us that plaintiff manufactured evidence for the trial; the jury apparently concluded otherwise. We are of the opinion that the evidence is sufficient to sustain the verdict.

Error based upon alleged prejudicial remarks of counsel in his argument to the jury cannot rest upon affidavits as to the statements made. Objectionable and improper statements of counsel made in the course of argument must be put upon the record at the time, and the court will see that they are correctly recorded. If the character of such statements is such that the court may remove wrong impressions, it will be done. There is a very definite practice to protect the record. State v. Peterson, 167 Minn. 216, 208 N. W. 761; State v. Cotter, 167 Minn. 263, 209 N. W. 4; Christopherson v. Custom Laundry Co. 179 Minn. 325, 229 N. W. 136; Moquin v. M. St. P. & S. S. M. Ry. Co. 181 Minn. 56, 231 N. W. 829. The proper practice was not followed in this case. Apparently, however, defendant has not suffered because of the omission, as such statements as were attempted to be attributed to defendant's counsel seem to have been a matter of legitimate argument. We have considered appellant's other assignments of error but find nothing to warrant our disturbing the verdict.

Affirmed.