## STATE v. MAURICE H. GEARY.[1]

November 6, 1931.

No. 28,473.

[1]Reported in 239 N. W. 158.

*Naughtin & Henley* and *McMahon & McMahon,* for appellant.

*Henry N. Benson,* Attorney General, *James E. Markham,* Deputy Attorney General, *Mason M. Forbes,* County Attorney, and *Harry E. Boyle,* Assistant County Attorney, for the state.

WILSON, C. J.

Defendant was convicted of manslaughter in the second degree arising out of his culpable negligence in the operation of an automobile and has appealed from an order denying his motion for a new trial.

At about eight o'clock a. m. on Sunday morning, August 25, 1929, after defendant had been up practically all night and over-indulging in drinking a wine called "Dago red," he drove his car on a paved highway at a speed of from 55 to 60 miles per hour; it left the road, went into rocky ground, rolled over, and was wrecked. One Ennis P. Hawkins, who was riding with defendant, was killed.

*Sufficiency of the evidence.* Upon the trial defendant testified that Hawkins was driving the car at the time of the accident. Immediately after the wreck he told one witness that he, the defendant, was asleep in the back seat as the car left the pavement. He told another person soon after the accident that he did not know who drove the car at the time of the wreck. It was defendant's car. Hawkins had left his car at his home and rode with defendant. About one-half hour before the accident a third party had suggested to defendant that he let Hawkins drive the car, but defendant refused. It was then suggested, apparently for the sake of safety, that defendant follow another car, which he agreed to do but did not. These suggestions were made by one Curtis, who left the place where they had been drinking, ahead of defendant, and he made the suggestions because he thought the defendant was too much under the influence of liquor safely to drive his car. Defendant's car was a Pontiac. Soon after leaving the place mentioned, the Pontiac car, traveling at about 40 miles per hour with

defendant at the wheel, passed the Curtis car. A few minutes later it stopped on the roadside with defendant at the wheel and was passed by the Curtis car. A moment later and about a mile up the road, the Pontiac car, traveling 55 to 60 miles per hour, passed the Curtis car the second time with defendant at the wheel and Hawkins at his side. In passing he cut in too close to the Curtis car, apparently narrowly escaping a collision and provoking Curtis to call out to defendant: "What in hell is the matter with you; have you gone crazy?" Defendant drove some distance up the road and stopped again on the shoulder of the road, and the Curtis car went by, though Mr. Curtis offered to help defendant, thinking he was too far over on the dirt shoulder of the road. Help was not necessary. Defendant, while behind the wheel, motioned Curtis to go ahead, which he did. Presently the Pontiac car again passed the Curtis car at a speed of 55 to 60 miles per hour. A moment later a short distance down the road the fatal tragedy occurred. Other witnesses who were on the road support Mr. Curtis' version as to defendant's conduct on the highway. The extent of defendant's drinking "Dago red" is established by several witnesses, including his own testimony.

The evidence and the circumstances justify the jury in rejecting defendant's claim that Hawkins was the driver in the fatal ride and warrant their conclusion that defendant himself was at the wheel and responsible for the wreck. It follows that the jury was also justified in finding defendant guilty of the crime. The evidence sustains the conviction.

■ *Sufficiency of the indictment.* It names the charge of manslaughter in the second degree and then recites that the defendant "did wrongfully, unlawfully, wilfully, feloniously and by culpable negligence, without design to effect the death of one Ennis P. Hawkins, a human being, inflict upon the said Ennis P. Hawkins, a human being, injuries, bruises and mortal wounds," etc.

Defendant objected to the introduction of any testimony on the ground that the indictment did not state facts sufficient to constitute a public offense. This was upon the theory that the presence of the word "wilfully" made the description of the offense murder

in the third degree and that the charging of such offense was obliterated by the words, "without design to effect the death of one Ennis P. Hawkins." Defendant's claim seems to be that the presence of the word "wilfully" so used is the equivalent of saying that defendant intentionally caused Hawkins' death. We do not agree. We construe the indictment as charging that he "wilfully" operated his car in such culpably negligent manner that he caused the death without design to do so.

Defendant was in no manner misled as to the charge by reason of the presence of the word "wilfully." He understood the charge. The court was very definite in the charge to the jury. There could have been no misunderstanding. If we may assume that the indictment stated facts sufficient in themselves to constitute a crime more serious than manslaughter in the second degree, it is sufficient to say that defendant cannot complain that he was not so charged but was put on trial charged with culpable negligence only.

■ *Misconduct of counsel.* In the cross-examination the county attorney, then the assistant county attorney, asked defendant:

Q. "Do you remember being in there and having any conversation with any employe in Murphy's garage about your not taking the car out?

      *    *    *    *    *

Q. "There was not anybody told you you had not better take your own car out?"

It would seem from these questions that the prosecutor hoped to establish by an admission from the defendant that on the Saturday afternoon before the morning of the accident defendant was then in such a state of intoxication as to prompt someone at the garage wherein his car was then located to advise him not to drive it. There is nothing in the record that in any way supports such a suggestion. Of course it is possible for a prosecutor to inject poison in a case by asking the defendant improper questions. On the contrary, there is nothing in the record to indicate that the county attorney did not act in good faith. The mere fact that defendant answered "no" to a similar question in the first trial, if such is the

case, is not a reason to think that the question in the second trial was prompted by an improper motive. While a belated objection was interposed, it was not suggested to the trial court· that the county attorney was actuated by improper motive, though it was suggested that the question was prejudicial.

The record does not disclose a conscious effort to prejudice the defendant. The substance of these questions in view of the quite conclusive evidence of defendant's subsequent intoxication does not seem of great importance, and it is quite probable that the jury would conclude from all the evidence that defendant did not begin drinking "Dago red" on this occasion until after two o'clock a. m. on Sunday· morning. Counsel's conduct was not characterized by persistency, nor does the record impeach his good faith. The trial court was' not asked to take any action. We are of the opinion that this alleged error does not call for a new trial. Fraser v. Farmers Co-op. Co. 167 Minn. 369, 209 N. W. 33, 913; State v. Rosenswieg, 168 Minn. 459, 210 N. W. 403; State v. Eaton, 171 Minn. 158, 213 N. W. 735; State v. Sweeney; 180 Minn. 450, 231 N. W. 225, 73 A. L. R. 380.

It is also urged that the county attorney was guilty of misconduct in his argument to the jury, when he referred to the defendant's stopping on the roadside as hereinbefore mentioned, by saying:

"I know and you know why Maurice Geary stopped alongside of the road with Ennis Hawkins. They stopped to take a drink."

The record does not show that defendant was carrying any liquor in the car to drink or that he had any liquor with him along the road for that purpose, but some allowance must always be made for the zeal of counsel. State v. Shepard, 171 Minn. 414, 214 N. W. 280. Upon the record and considering the apparent unnecessary stops on the highway and his speed between such stops, we are reluctant to say that the county attorney in making such statement was beyond the field of legitimate argument. Perhaps we should refuse to consider this assignment, because when counsel makes prejudicial remarks to the jury it is the duty of the opposing counsel then and there to have a record made, take an exception,

and ask the court to direct the jury to disregard such statements. In this case no such record was made. On the contrary, counsel for appellant undertakes to establish the making of the alleged statement by an affidavit made by one of defendant's counsel about two weeks after the trial. Such practice is unauthorized. State v. Peterson, 167 Minn. 216, 208 N. W. 761; Moquin v. M. St. P. & S. S. M. Ry. ·Co. 181 Minn. 56, 63, 231 N. W. 829; Sigvertsen v. Maney Brothers M. & E. Co. 182 Minn. 387, 234 N. W. 688.

■ *Misconduct of jurors.* The claim is that the jury was guilty of misconduct in bringing in a verdict without having unanimously agreed thereon. Counsel for appellant attached to their motion for a new trial an affidavit of one Daniel Shea, who states that hé was a member of the jury which returned a verdict of defendant's guilt and that at the time the case was submitted to the jury he was troubled with a very painful swelling of one foot which rapidly progressed so that by evening he was suffering excruciating pain; that he was of the opinion that defendant was not guilty and so voted until after suffering very severe pain throughout the entire night; that he had never had such experience and did not know what his rights were and claims to have been informed and believed that he did not have any authority to see a doctor or receive medical attention; and he states that because of such pain he consented to a vote of guilty in order that he might receive medical treatment, which he later says he did receive. In opposition to this affidavit the state offered an affidavit of the foreman of the jury, who states that the juror Shea did not complain to him in his capacity as foreman of said jury, or otherwise, of suffering excruciating pain during the jury's deliberation, nor did Shea endeavor to get in touch with the court or any bailiff or any physician relative to his physical condition; and that he, the foreman, was not advised that Shea was suffering excruciating pain. It would seem that the affidavit of the juror Shea could not be used in support of the motion. 5 Dunnell, Minn. Dig. (2 ed. & Supp.) § 7109; State v. Hook, 176 Minn. 604, 224 N. W. 144. But as to that we do not decide. It is sufficient to say that the affidavit is adequately met by the

affidavit of the foreman of the jury, and if the affidavits were considered at all this court should not disturb the trial court's conclusion in favor of the foreman's affidavit.

Affirmed.